(No. 32557.

THE PEOPLE *ex rel.* Vivian Montgomery *et al.*, Appellants,
*vs.* EUGENE P. LIERMAN, County Judge, Appellee.

*Opinion filed March 23, 1953—Rehearing denied May 18, 1953.*

DONALD D. RICHMOND, of Champaign, and W. LEE SUMMERS, of Urbana, for appellants.

JOHN J. BRESSEE, State's Attorney, W. C. NOEL, GENE D. WEISIGER, JOHN H. FINFROCK, and ORIS BARTH, all of Urbana, (HENRY I. GREEN, CHANCY L. FINFROCK, WINKELMANN & WINKELMANN, J. M. MITCHEM, W. A. NICHOLS, GLEN E. CHAPMAN, OLIN L. BROWDER, and ROY R. CLINE, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Champaign County denying appellants' petition for a writ of *mandamus* directed to the county judge of that county, commanding him to call an election in the cities of Champaign and Urbana to vote on the proposition of merging those two cities. The validity of article 6 of the Revised Cities and Villages Act relating to the union of contiguous municipalities (Ill. Rev. Stat. 1951, chap. 24, par. 6-1 *et seq.*) being in issue, the appeal is taken directly to this court.

On December 27, 1951, there was presented to appellee, Eugene P. Lierman, county judge of Champaign County, a petition, signed by more than 250 electors of the city of Champaign and by more than 250 electors of the city of Urbana, both of said cities being located in the county of Champaign, requesting him to call a special election pursuant to chapter 24 of the Illinois Revised Statutes. The question to be submitted to the voters of said cities at the proposed election was: "Shall the City of Urbana and the City of Champaign be united into a single municipality under the name of Champaign-Urbana, with the Alder-

manic form of municipal government?" Appellee set the petition for hearing. Objections to the petition were filed by the city attorney of Urbana and others. Hearing was had and the matter taken under advisement. Thereafter appellee issued a written decision refusing to call the election because of his opinion that article 6 of the Revised Cities and Villages Act was unconstitutional.

On March 18, 1952, appellants filed in the circuit court of Champaign County a verified petition for a writ of *mandamus,* directed to appellee, as county judge of said county, commanding him without delay to call a special election as requested in said petition, and to submit to the electors of the cities of Champaign and Urbana the question of uniting these two cities into one municipality. Appellee filed an unverified answer signed by himself and fifteen attorneys. Attached to the answer, as "Exhibit A," was a copy of the opinion which he rendered as county judge, declaring that sections 1, 6, 7, 9, 22, 25, and 27 of article 6 of the Revised Cities and Villages Act are probably unconstitutional. He filed another unverified answer, signed by himself and by the State's Attorney of Champaign County, in which he said the appellants were not entitled to the writ of *mandamus* or to any other relief. Appellants moved to strike these answers because they were not verified. Thereupon appellee filed a countermotion requesting that verification of his answers be excused. Appellants then filed their reply. Upon a hearing before the court without a jury, the petition for writ of *mandamus* was denied.

The reasons given by the trial judge for his decision were (1) that the cities of Champaign and Urbana are not contiguous, within the meaning of the law, and (2) that the act is vague, indefinite and uncertain, and therefore unconstitutional. Among the points upon which the court based its determination of unconstitutionality, and/or which are urged by appellee on review are (1) that the act is

indefinite and uncertain in meaning and application; (2) there is no provision for the creation of wards in the united cities; (3) the act fails to provide for a primary election; (4) the taxing powers of the community would be disrupted by the merger; (5) the act attempts to amend various other statutes and acts of the legislature; and (6) it provides for unlawful classification.

The contention that the two cities are not contiguous seems to be based upon our decision in the case of *Village of Morgan Park* v. *City of Chicago,* 255 Ill. 190. The map introduced in evidence shows that the cities of Champaign and Urbana are divided by a line running due north and south. The boundaries are contiguous throughout except near the south end, where, at the north boundary line of Mt. Hope Cemetery, the Urbana corporation line turns east and the Champaign corporation line turns west. The Urbana corporation line follows the north boundary line of Mt. Hope Cemetery and the east boundary line thereof to the southeast corner of the cemetery. The corporation line then turns west, and runs along the south boundary line of the cemetery to a point directly south of where it turned east on the north boundary line of the cemetery. The Champaign corporation line comes around the cemetery the other way, and the corporation lines meet again on the south boundary line of the cemetery, and from that point the common boundary line between the two cities extends south to the south boundary line of those cities, where the Champaign boundary line extends west and the Urbana boundary line extends east. Within the area enclosed with Mt. Hope Cemetery and at the westerly end thereof is another cemetery, called Roselawn Cemetery, and immediately north of Roselawn Cemetery, and within the enclosed area, are some horse barns belonging to University of Illinois, the grounds of which are immediately adjacent on the north. The record does not show the reason for excluding this small tract of land, which is about 870 feet from north to south and

about 2200 feet from east to west, but the situation is not comparable to what it was in the *Morgan Park case*. In that case the annexation enclosed some 200 acres of unincorporated land called "no man's land." The annexation was denied because, the court states, "A city could not be organized as the city of Chicago would be with the village of Morgan Park annexed to it, having unorganized or unincorporated territory within its boundaries and entirely surrounded by it." There the boundary lines of the village and the city were not the same for a distance of one and three-quarters miles. The court further stated that a city could not be organized that way and it was not intended by the General Assembly that the same result should be accomplished by a change of boundaries, constituting to that extent an amendment of its charter. Here only about 40 acres are enclosed by the boundaries of the two cities which are not common for only a distance of about 870 feet. It cannot be said that the cities of Champaign and Urbana are not contiguous because each city looped its boundary lines in an opposite direction around this cemetery tract, where nobody lives, or is likely to live, and no enterprise is carried on, and the small tract occupied by horse barns belongs to the University of Illinois, where their boundaries are ·contiguous throughout the remainder of their length, both north and south of this small tract. In giving effect to the word "contiguous" no strained, strict or unusual definition should be applied, but practical and common sense should prevail by adopting the sense best harmonizing with the context and promoting the apparent policy and objects of the legislature in the light of the general purposes of the act. (*People ex rel. Singer* v. *Illinois Central Railroad Co.* 373 Ill. 523.) The court's holding that the cities of Champaign and Urbana are not contiguous is obviously a strained, unnatural construction, wholly out of harmony with the facts as they exist in this situation. Error is manifest in such determination.

Appellants further contend that the merger provisions of the act are unconstitutional. The cities of Champaign and Urbana are creatures of the legislature with no vested rights as such. Legislation enabling the electors of those cities to unite or to change their boundaries is not *per se* unconstitutional. In holding valid the annexation of the city of Lake View to the city of Chicago we said, "Our constitution contains no restriction as to the organization of cities, towns and villages, or the changing and amending or repeal of their charters, and, consequently, no restriction in respect to uniting or dividing cities, towns and villages, or annulling their charters, save only that it cannot be by local or special law, but must be by a general law; and it is familiar law that, in the absence of constitutional restriction, the legislature may provide for the organizing, uniting, dividing or annulling such corporations, in such manner as it shall deem best to promote the public welfare." *True* v. *Davis*, 133 Ill. 522.

Much is said by respondent about the merger provisions of the act being incomplete, vague and uncertain, but we do not think these objections are well founded. Article 6 of the Revised Cities and Villages Act is entitled "Union of Contiguous Municipalities." Section 6-1 provides that any two or more incorporated contiguous municipalities situated in a single county may be united into one incorporated city by a compliance with sections 7-13 and 7-14, save that the petition shall be signed by electors of each of the municipalities, shall state the name by which the united municipality is to be known, and shall state the form of municipal government under which it is to operate. Paragraph (2) of section 6-1 gives the form of the ballot, and the form of the ballot set forth in the petition filed in the county court of Champaign County in the instant case complies with the statutory form. Section 7-13 provides that the petition shall be presented to the county judge, that the county judge shall thereupon submit the question to the electors

of both municipalities, either at a regular municipal election or at a special election to be held not less than 90 nor more than 180 days subsequent to the filing of the petition. Section 7-14 provides that the county clerk shall give notice of the election and states the kind of notice that shall be given. Section 6-2 provides that a certified copy of the canvass of the votes of the election, made by the proper officers, shall be submitted to the clerk of each municipality and to the county clerk, and that each clerk shall transcribe the certified copy on his official record. It also provides that if the vote is in favor of the union the mayor or president of the board of each municipality shall immediately issue a proclamation declaring the existence of the union. The union is then created, and each former city is known as a borough. Sections 6-3 to 6-27, both inclusive, provide the manner in which the united city shall be governed during its transitory stage. Section 6-6 makes the city election law applicable to municipalities which have united under this article and provides that within ten days after compliance with section 6-1 the county court shall create a board of election commissioners as provided in the City Election Law, and that this board shall perform all duties necessary for holding the first and subsequent elections in the united city and in each borough thereof. Section 6-7 provides the method of calling the first election of officers in the united city and the time when it shall be held. Section 6-8 provides when the terms of office of the elected officers shall begin and end. Section 6-9 provides that the united city shall assume and pay all the debts and liabilities of each borough.

Other sections of that article provide that the creation of a united city shall not adversely affect the collection or enforcement of any tax or special assessment levied or assessed in any municipality that has become a borough of a united city; that proceedings to collect and enforce such taxes and special assessments may be instituted and carried

on in the name of the municipality; and that taxes and special assessments when collected shall be paid over to the treasurer of the united city and shall be used for the purpose for which they were levied or assessed.

Section 6-14 provides that police magistrates and justices of the peace shall continue in office until their terms expire or until they cease to function, and that at the expiration of their terms they shall turn over all official dockets, books and papers to the officer specified by law. Policemen and firemen of both cities become policemen and firemen of the united city, (sec. 6-15,) and all ordinances and regulations pertaining to alcoholic liquors which were in effect in either city continue in effect in the united city. (sec. 6-16.) Section 6-25 provides that the valid ordinances of the former cities shall remain valid within the united city until repealed, either expressly or impliedly, and that the school system in the united city shall not be affected by the merger.

Section 6-19 provides that a united city selecting the aldermanic form of government shall be governed, after the first election held in compliance with section 6-7, by a council composed of a mayor and a board of aldermen selected by the electors of the united city as provided in the Revised Cities and Villages Act relating to the election of city officers, except that all elections in a united city are controlled by the City Election Law, as provided in section 6-6. The legislature contemplated that every provision of the entire Revised Cities and Villages Act should be in effect in all cities organized under or adopting the general act for the organization of cities and villages, insofar as the same are applicable. Section 9-28 provides the number of aldermen that shall be elected in a united city under the aldermanic form of government, and section 9-29 provides for the division of the city into wards. According to the record in this case Champaign has a population of about 39,000 and Urbana has a population of about 22,000,

making a total population of about 61,000. Section 9-26 provides for 14 aldermen for cities exceeding 10,000 but not exceeding 30,000 population, and provides for two additional aldermen for every 20,000 inhabitants over 30,000. Assuming that these figures are correct, the united city would be entitled to 16 aldermen, and since this section provides that two aldermen shall be elected in each ward, the united city would be divided into 8 wards, as provided in section 9-29.

It is objected that while section 6-2 of the act provides that the united municipality shall be governed by sections 6-3 to 6-27, inclusive, there is no provision that the city shall also be governed by the act concerning municipal officers under the aldermanic form. It is not necessary that the act contain such a provision. Immediately upon the cities being merged, the united city is just like any other city operating under the provisions of the general cities and villages act and is bound by all the provisions thereof, besides being bound by the special requirements during the period of transition. It is objected that section 6-7 fails to define what is meant by the word "corporate authorities." Obviously, the "corporate authorities" in Champaign are the mayor and four commissioners, and in Urbana the mayor and the members of the city council. It is objected that the section fails to designate which clerk shall certify the ordinance for the first election of officers. That section provides that the presiding officer of the oldest of the boroughs shall call the meeting and preside over it and that the clerk shall certify the ordinance adopted at that meeting. It further provides that if the ordinance is properly adopted and executed by the corporate authorities of one of the boroughs, the election shall be valid even if the corporate authorities of the other boroughs fail to act. This provision obviates that objection. It is objected that the act fails to provide for the transfer of accounts by the board of trustees of the Municipal Retirement Fund, fails

to provide for the time or manner of consolidation of the libraries of the two cities, fails to provide what disposition is to be made of contracts and franchises in force. Many other objections are made that are more fanciful than real.

All funds and records would be transferred to the proper authorities of the united city. The libraries would belong to the united city and the corporate authorities of the united city would determine by ordinance whether they would be consolidated or operated separately. The ordinance could also provide how the two library boards would be merged or reorganized, or abolished and a new library board created, as they saw fit. Policemen and firemen who were entitled to a pension in one of the boroughs would have the same right as a member of the police or fire department of the united city. When the statute provides that all obligations of the cities are assumed by the united city and that all the assets of the former cities become the assets of the united city there can be no uncertainty as to what disposition is to be made of contracts and franchises in force.

Objection is made that section 6-6 automatically makes the city election law applicable to merged cities, whereas other cities have a right of referendum as to whether they shall adopt the act. The legislature has the right to make the city election law applicable to all cities, or it may make it applicable to cities in a certain population class, or it may make it applicable to cities operating under a certain form of government. The legislature therefore was acting properly within its function in making the city election law automatically applicable to merged cities as a class. It is urged that the act fails to provide for a primary election. This is not necessary. After the separate cities have become a united city all election laws and primary election laws that are applicable to cities under the same form of government are applicable to the united city. It is not necessary in all cases to nominate candidates by primary elections, and where the act is silent as to the

method by which candidates are to be nominated at the first election of the united city, resort may be had to the other methods used in similar situations as may be determined by ordinance. (*People ex rel. Hoyne* v. *Sweitzer,* 266 Ill. 459.) Section 6-19 especially provides that whenever a united city is formed and the decision is in favor of an aldermanic form of municipal government, the united city shall be governed, after the first election held in compliance with section 6-7, by a council composed of a mayor and a board of aldermen selected by the electors of the united city as provided by the provisions of this act relating to the election of city officers, except that all elections in a united city are controlled by the city election law as provided in section 6-6. The legislative intention is properly disclosed by the language of the act when viewed as a whole, and the fact that the section does not specify in detail the method of effecting consolidation does not invalidate the proceeding, but merely leaves other details to be governed by other sections of the act. (*City of Nameoki* v. *City of Granite City,* 408 Ill. 33.) It is impracticable for a statute to specify every detail of its administration. It is sufficient if the statute contains the general principles to be followed and leaves the details of the ministerial acts in the hands of those who are charged with the duty of administering the act. *People ex rel. Armstrong* v. *Huggins,* 407 Ill. 157.

We hold that the merger provisions of the Revised Cities and Villages Act are valid and constitutional, that they are not vague and uncertain in meaning or impossible of application, nor do the merger provisions of the act attempt to amend any other statute or act of the legislature nor create any unlawful classification of employees. The circuit court erred in declaring the act unconstitutional for the reasons here assigned.

In his statement of the case and his assignment of errors, points and authorities, appellee raises one other question of

import. He maintains that no proof appears in the record that the petitions filed with him as county judge to call the election were signed by 250 legal voters of both cities, or of either of them. He urges that the affidavits filed therewith were insufficient proof of this necessary fact. Appellee failed to argue this point in his brief. Failure to argue points assigned as error is deemed a waiver and the points will not be considered on appeal. *Greer* v. *Carter Oil Co.* 373 Ill. 168; *Dean Milk Co.* v. *City of Elgin,* 405 Ill. 204.

The circuit court of Champaign County erred in denying the petition for writ of *mandamus* filed by appellants. The judgment of that court is, therefore, reversed and the cause is remanded thereto with directions to award the writ as prayed.

*Reversed and remanded, with directions.*