LYMAN T. BURGESS *vs*. CHICOPEE SAVINGS BANK.

Hampden.   September 25, 1957. — November 6, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Negligence*, Bank, Obnoxious person.

Evidence that, while a salesman was talking with the treasurer of a savings bank in temporary quarters which were then occupied by it in an old building designated as such temporary quarters by an outside sign and which were not protected by an alarm system or guards, an armed man appeared where they were sitting and shot the treasurer, whereupon the salesman chased the assailant toward the entrance of the building and was himself shot by the assailant, did not warrant a finding of negligence on the part of the bank toward the salesman.

TORT.   Writ in the Superior Court dated October 7, 1953. The action was tried before *Dewing*, J.

*Robert J. Moran*, for the plaintiff.

*Frederick S. Pillsbury*, for the defendant, was not called on.

SPALDING, J.   In this action of tort the plaintiff had a verdict, which was recorded under leave reserved.   Thereafter, on motion of the defendant, the judge entered a verdict for the defendant, and the plaintiff's exception to this action presents the sole question for decision.

The pertinent evidence may be summarized as follows: The defendant is a savings bank in Chicopee.   In order that its permanent quarters might be remodeled, the defendant moved into temporary quarters in October, 1951.   The new quarters were located in the first floor banquet hall of a brick building (estimated to be eighty to one hundred years old) on Center Street, one of the two principal streets of Chicopee.   The Chicopee post office was diagonally across the street from the temporary quarters and the police sta-

tion was two hundred yards away. At the time the bank was in its temporary quarters, it had seven or eight employees.

In the temporary quarters the defendant installed protective screens for the tellers and placed signs stating that it was protected by the American Bankers' Association and the Burns Detective Agency. It also installed a Tisco safe which "is rated as being burglar proof," and a cash guard drawer. The cash guard drawer is a safe underneath the teller's cash drawer and takes the teller's surplus money from the drawer through a trap door; "[t]his device has a delayed control and takes about fifteen minutes to open." A plain glass window was installed so that the bank's vault could be seen from the outside by the police. With the exception of the alarm system, all the security precautions which had been taken in the permanent quarters were employed in the temporary quarters. This alarm system consisted of a gong outside which was wired to the vault and to buttons in the tellers' cages. It was installed in such a way that it could not be moved. There was a sign on the outside of the building stating that it was the temporary quarters of the bank. No guards were employed by the bank. At the time of the incident hereinafter described the defendant was occupying its temporary quarters.

On December 7, 1951, the plaintiff, a salesman in the employ of Prentice-Hall, Inc., entered the premises of the defendant for the purpose of selling the defendant the tax service of his employer. He approached one Marshall, the defendant's treasurer, and asked him if he could talk with him about the tax service. Marshall invited the plaintiff to sit down and he did so. After talking with Marshall for a few minutes, a man appeared holding a shopping bag over his chest and ordered Marshall to stand up and put up his hands. Marshall asked the man if it was a joke, whereupon the man lowered the shopping bag revealing a "big 45 calibre gun." Marshall then "realized the man meant business" and started to get up but before he could do so the man shot him.

The plaintiff testified that he then "did a darn fool thing, [that] on a reflex he got up from the chair and chased the man." The plaintiff followed the assailant through the inner entrance to the bank to a point about half way down the hallway leading to the outer door, when the assailant turned and shot him. The assailant made no attempt to take anything from either the plaintiff or Marshall.

There was no error.

We assume without deciding that at the time the plaintiff was injured his status on the defendant's premises was that of a business invitee to whom the defendant owed a duty of ordinary care. See *Lanstein* v. *Acme White Lead & Color Works,* 285 Mass. 328, 329. But we are of opinion that the plaintiff has failed to show a breach of that duty. The plaintiff argues in substance that it is common knowledge that banks are frequently visited by armed robbers and that the defendant was negligent in failing to take more precautions than it did. Thus, the plaintiff argues, the defendant might have been found to be negligent in occupying an old building of the type here involved as temporary quarters and designating it as such; in not employing the alarm system used in the permanent quarters; and in not having the premises protected by guards. These and other precautions, it is argued, would have served as a greater deterrent to robbers.

It is true that bank robberies are not uncommon occurrences. But banks are not obliged to go to unreasonable lengths to prevent them. They are required to exercise reasonable care to protect those who are upon their premises to transact business. They are not insurers. And they cannot be held accountable for the criminal acts of third persons under any and all circumstances. There are, to be sure, instances where an occupier of premises may be liable to an invitee for the wrongful and even criminal acts of third persons. *McFadden* v. *Bancroft Hotel Corp.* 313 Mass. 56. *Rawson* v. *Massachusetts Operating Co. Inc.* 328 Mass. 558. *Greco* v. *Sumner Tavern Inc.* 333 Mass. 144. But liability arises in such cases only in circumstances where

the occupier ought reasonably to have anticipated the possibility of harm to the invitee and guarded against it. In the cases cited above the assailant had been on the premises for some time before harm occurred. The negligence of the defendant in those cases consisted in allowing a dangerous condition to develop over a considerable period of time without taking steps to prevent it. In the case at bar, however, the assault was swift and without warning. There was nothing that the defendant could reasonably have done during the few moments that the robber was in the bank. Moreover, it is entirely a matter of conjecture whether the added precautions suggested by the plaintiff would have appreciably diminished the likelihood of an occurrence of this sort. Unless the liability of a bank is to be virtually absolute — and we are not disposed to impose such liability — there is no basis for recovery against the defendant on the evidence here.

*Exceptions overruled.*