(No. 37409.—

ACORN AUTO DRIVING SCHOOL, INC., *et al.,* Appellants, *vs.* BOARD OF EDUCATION OF LEYDEN HIGH SCHOOL DISTRICT NO. 212 *et al.,* Appellees.

*Opinion filed February 1, 1963.*

Harry R. Booth, of Chicago, for appellants.

Norman, Engelhardt, Zimmerman, Franke & Lauritzen, of Chicago, Osborn and Hershman, of Franklin Park, and Richard J. Fitzgerald, of Chicago, (William R. Engelhardt, Jack W. Osborn and Ben Copple, of counsel,) for appellees.

Mr. Justice Underwood delivered the opinion of the court:

Plaintiffs, Acorn Auto Driving School, Inc., and Sam Davis, filed their complaint for an injunction permanently restraining the three defendant boards of education from continuing to provide driver training instruction or classes of any kind to persons over the age of 21. A motion to dismiss the complaint as amended was sustained, and plaintiffs electing to stand on the complaint as amended have appealed directly to this court since the validity of a statute is involved.

Plaintiff Davis is a substantial stockholder in and president of Acorn, an Illinois corporation licensed by the Secretary of State as a commercial driver training school under the statutory provisions therefor. (Ill. Rev. Stat. 1961, chap. 95½, pars. 6—112 *et seq.*) He is also a licensed chauffeur in Illinois. The suit is brought on behalf of all other commercial driving schools in the Chicago metropolitan area who are allegedly suffering wrongful injury and damage due to the allegedly unlawful competition of the defendant school boards who have been since September, 1960, offering driver training instruction and classes to persons over 21. Each of the defendants is a high school district under the School Code (Ill. Rev. Stat. 1961, chap. 122). The complaint charges the conduct of such adult driver training classes by defendants is essentially a business or commercial activity, and the fees charged by defendants are considerably higher than the fees charged for other adult classes. Further, the defendants are alleged to have spent substantial sums of money to advertise these classes, and that defendant Thornton district offers to provide such instruction to persons living outside its district. The complaint charges this activity to be in violation of the provisions of the Driver Education Act (Ill. Rev. Stat. 1961, chap. 122, par. 27—24.1 *et seq.*) ; that plaintiffs and others similarly situated are suffering irreparable loss from such unlawful competition, and that such losses are destructive of their property rights in violation of the due-

process clause of the Illinois constitution; that any rules or regulations issued by the Superintendent of Public Instruction conferring authority on defendants to provide driver education to persons over 21 are null and void; and that the provisions of any statute, including section 10—22.20 of the School Code of 1961 purporting to confer authority on defendants to furnish adult or driver education classes to persons over 21, are null and void and in violation of "the due process provisions and equal protection clauses of The Constitution of the State of Illinois and that of the United States." The complaint prays for injunctive relief and an adjudication that such operations by defendants are illegal and in violation of the laws of Illinois and "the property rights of the plaintiffs and their rights of due process under the Constitution of the State of Illinois."

The motion to dismiss filed by defendants which admits all facts properly pleaded in the complaint (*Pease* v. *Kendall,* 391 Ill. 193; Ill. Rev. Stat. 1961, chap. 110, par. 45) alleged that sections 10—22.20 and 27—24.2 of the School Code grant the power to defendants to conduct the driver training classes for adults and do not restrict such classes to persons between the ages of 15 and 21. The motion further alleges that the complaint charges no violation of the rules and regulations of the Superintendent of Public Instruction promulgated under section 27—24.8 of the School Code, and that since the State of Illinois reimburses defendants only for driver education for pupils between 15 and 21, plaintiffs have no standing as taxpayers to bring the suit.

The order of the circuit court of Cook County sustaining the motion to dismiss overruled plaintiffs' contention that section 10—22.20 of the School Code is unconstitutional and void in violation of article II, section 2, article III, article VIII, and article IX, section 3, of the Illinois constitution or the due-process and equal protection clauses of the United States constitution, and found that section

10—22.20 is not uncertain, vague or indefinite or otherwise invalid as denying plaintiffs due process or unconstitutionally delegating legislative power to defendants in violation of article III of the Illinois constitution. The court further found section 10—22.20 confers authority on defendants to provide driver education to persons over 21, and that section 27—24.2 does not limit the power of defendants to provide the classes alleged by plaintiffs to be unlawful.

In 1927, the legislature provided that common school and high school districts were empowered "To establish classes for the instruction of persons over twenty-one years of age, and to pay the necessary expenses of the same out of school funds of the district." (Laws 1927, p. 817). This provision has been reenacted without substantial change at numerous legislative sessions since, until the present section 10—22.20 of the School Code of 1961 provides that such districts have the power: "To establish classes for the instruction of persons over 21 years of age, and to pay the necessary expenses thereof out of school funds of the district. Notwithstanding the provisions of this section the board may make a tuition charge of the persons taking instruction in an amount not to exceed the cost of such program." (Ill. Rev. Stat. 1961, chap. 122, par. 10—22.20.) The second sentence relating to a tuition charge was added in 1957. Ill. Rev. Stat. 1957, chap. 122, par. 6—51.

The constitutionality of this section has never been passed on by this court, and plaintiffs contend that it is indefinite, vague and uncertain, constitutes an unlawful delegation of legislative authority, and violates the due-process clauses of the Illinois and Federal constitutions.

This court has held that a board of education, organized and existing under legislative enactment pursuant to section 1 of article VIII of the constitution of 1870, is a "corporation or *quasi* corporation created, *nolens volens,* by the general law of the State to aid in the administration of the

State government, and charged, as such, with duties purely governmental in character.  *  *  *  It is simply an agency of the State, having existence for the sole purpose of performing certain duties, deemed necessary to the maintenance of an 'efficient system of free schools' within the particular locality in its jurisdiction". (*Kinnare* v. *City of Chicago,* 171 Ill. 332, 334, 335.) Section 10—2 of the School Code now provides that the directors of each district shall be a body politic and corporate; section 10—20, that the board has the duties enumerated in sections 10—20.1 through 10—20.19, and section 10—22, that the board shall have the powers specifically granted in section 10—22.1 through 10—22.34; nevertheless they have broad discretion in the use of those powers within the limits of the grant. *Lindblad* v. *Board of Education,* 221 Ill. 261, 271.

Plaintiffs contend that section 10—22.20 is indefinite, vague and uncertain, in that it fails to prescribe any specific standards by which anyone can determine what his rights are. They rely on the language of this court in *People ex rel. Duffy* v. *Hurley,* 402 Ill. 562, where, in considering certain legislation amending the City Civil Service Act, we said (p. 567) : "In our consideration of other statutes alleged to be illegal as unwarranted delegations of legislative power, we have held that an act, to be valid, must not be vague, indefinite and uncertain. As pointed out in *Krebs* v. *Thompson,* 387 Ill. 471, it must be complete when it leaves the legislature and be sufficiently explicit to advise everyone of what his rights are under the act and how he will be affected by its operation. (*Chicagoland Agencies* v. *Palmer,* 364 Ill. 13). Statutes which are so incomplete, vague, indefinite and uncertain that men of ordinary intelligence must necessarily guess at their meaning and differ as to their application, have uniformly been declared unconstitutional as denying due process. (*Triner Corp.* v. *McNeil,* 363 Ill. 559; *Parks* v. *Libby-Owens-Ford Glass Co.,* 360 Ill. 130.) For a statute to be held valid the duty imposed

by it must be prescribed in terms definite enough to serve as a guide to those who have the duty imposed upon them. (*Vallat* v. *Radium Dial Co.*, 360 Ill. 407)."

It is true that section 10—22.20, standing alone, cannot be said to prescribe a course of study for persons over 21 years of age, nor does it provide a formula for computing tuition charges, nor does it make the establishment of such classes mandatory. But it does grant the *power* to the board to establish such classes, pay for the expenses thereof, and determine what, if any, tuition shall be charged to the pupil. This section should not be considered by itself. It must be construed together with and in the light of all the other provisions of the School Code. (*People ex rel. Knecht* v. *Chicago and Eastern Illinois Railroad Co.* 300 Ill. 218, 222; *Moyer* v. *Board of Education,* 391 Ill. 156, 162.) Plaintiffs argue that this construction would permit the school board to offer adult classes in every possible subject including college, university and professional courses, and to award professional or other degrees. This does not follow. It seems obvious to us that by its terms the School Code encompasses only the furnishing of a system of free schools, "whereby all children of this state may receive a good common school education." (Const., art. VIII, sec. 1.) But we must recognize that despite the growth of public education in the past century, there are still many citizens of this State who are illiterate or who, for various reasons, either did not receive or did not avail themselves of a common school education. We need an enlightened electorate, and it is in the public interest that the legislature provides a means for persons over 21 to overcome educational deficiencies and to acquire the basic tools for life in a complex society. The "common school" curriculum of 1963 is far different from that of 1870. Whether it is better is not for us to determine, but we hold that section 10—22.20 does validly authorize furnishing instruction by the public schools to persons over 21 years of

age in all subjects properly offered to persons under that age by such public schools under the School Code of 1961.

This brings us to the consideration of whether section 27—24.2 prohibits the furnishing of driver education classes to persons over 21. The Driver Education Act (Ill. Rev. Stat. 1961, chap. 122, par. 27—24 *et seq.*)' was first adopted in 1957 and reincorporated into the School Code in 1961. Section 27—24.2 provides: "Any school district which maintains grades 9 through 12 may offer a driver education course in any such school which it operates. Both the classroom instruction part and the practice driving part of such driver education course shall be open to each resident of the district who acquires or holds a currently valid driver's license during the term of the course and who has reached his fifteenth but not his twenty-first birthday without regard to whether any such person is enrolled in any other course offered in any school that the district operates. However, a student may be allowed to commence the classroom instruction part of such driver education course prior to reaching age 15 if such student then will be eligible to complete the entire course within 12 months after being allowed to commence such classroom instruction. Such course may be offered throughout the calendar year and a new course may be commenced immediately after the completion of a prior course. Teachers of such courses shall meet the certification requirements of this Act and regulations of the Superintendent as to qualifications and may be employed on a calendar year rather than a school year basis."

The manner of making claim for and receiving reimbursement from the State is provided in sections 27—24.3 to 27—24.6 inclusive, and section 27—24.5 provides in part that "The State shall not reimburse any district for any student * * * who did not meet the age requirements of this Act during the period that he was a student in any part of the drivers education course." Sec-

tion 27—24.7 provides that "The provisions of this Act not inconsistent with the provisions of the Driver Education Act shall apply to the conduct of instruction offered by a school district under the provisions of the Driver Education Act." Section 27—24.8 authorizes the Superintendent of Public Instruction to promulgate rules and regulations not inconsistent with the Driver Education Act for the administration of the Driver Education Act.

Pursuant to section 27—24.8, the Superintendent of Public Instruction issued rules and regulations (before the court by stipulation of counsel) which emphasized the voluntary nature both of taking the driver education course by a pupil and the offering of such course by the school board, and which further point out that a district offering a course for re*imbursement* must accept as a student any eligible resident of the district, and define eligibility as being a resident of the district who has reached his 15th but not his 21st birthday. The rules go on to provide: "In addition to meeting the demand for driver education for the eligible group, 15 to 21 years of age, many communities may find that there is a demand for the service from adults, especially during the summer. Meeting this demand is, of course, optional. The adult courses are not reimbursable under the law, except for those pupils who are 15 but not yet 21 years of age and when no tuition is charged."

Plaintiffs contend that the rules and regulations of the Superintendent of Public Instruction do not confer authority on defendants if such rules and regulations and the construction of the statute by him are erroneous. (*Superior Coal Co.* v. *Department of Revenue,* 4 Ill.2d 459, 468.) But these regulations emphasize the permissive features of the legislation. The Driver Education Act must be considered with the rest of the School Code to determine the duties and powers of school districts with respect to driver education. Nowhere do we find any expression by

the legislature that defendants shall be prohibited from offering driver education to adults. Reimbursement from the State is not provided for adult driver training, but we do not conclude from section 27—24.5 that a nonreimbursable course of instruction is prohibited. This is a matter of policy for the board to determine and we reaffirm our language in *People ex rel. McCollum* v. *Board of Education*, 396 Ill. 14: "Questions of policy are solely for the determination of the board, and when they have once been determined by it the courts will not inquire into their propriety. (*People ex rel. Fursman* v. *City of Chicago*, 278 Ill. 318.) Courts will not interfere with the judgment of the board unless by an arbitrary and discriminatory action it abuses the power granted. *Segar* v. *Board of Education*, 317 Ill. 418."

The course of study to be offered by the district is determined by its board. (Ill. Rev. Stat. 1961, chap. 122, par. 27—1; *Powell* v. *Board of Education*, 97 Ill. 375.) The exercise of its discretion by the board in this regard is not a determination of the law, but is a ministerial or administrative decision in the exercise of the law. (*School District No. 79* v. *County Board of School Trustees*, 4 Ill.2d 533, 537; *People ex rel. Montgomery* v. *Lierman*, 415 Ill. 32, 42.) A statute, when couched in general terms, necessarily reposes a reasonable discretion in the officials charged with its enforcement. *Investors Syndicate of America, Inc.* v. *Hughes*, 378 Ill. 413, 420.

We therefore hold that the School Code, and particularly sections 10—22.20 and 27—24 *et seq.* permit the defendants to offer driver education classes for persons over the age of 21, who qualify for classes in those districts. We do not hold, however, that the defendants may indiscriminately accept anyone or everyone over 21 who may desire to enroll. This is not a taxpayer's suit. The complaint as amended alleges no facts giving plaintiffs any standing in this suit to question, as taxpayers in the de-

fendant districts, or any of them, the possible misapplication of tax moneys for the education of nonresidents of the district. This question is therefore not before the court.

The contention that the offering of such courses by defendants to persons over 21 constitutes unlawful and unfair competition and denies plaintiffs due process of law under the Illinois and Federal constitutions and equal protection of the law under the Federal constitution is without basis. The legislature has deemed the public interest to be subserved by the offering of driver education classes in the public schools. Our modern economy and way of life are closely geared to the automobile (*Poole* v. *City of Kankakee,* 406 Ill. 521, 528) and we do not dispute the need for adult driver education. Public safety and welfare demand it. Acorn is a resident of the city of Chicago and is not a taxpayer in any of defendant districts. It appears from the complaint as amended that the board of education of the city of Chicago does not furnish driver education to persons over 21 or who are not residents of the city of Chicago. Just what bearing this may have on the issues we cannot surmise, except to conclude that the Chicago board is not competing with the commercial driver training schools such as Acorn. Actually, the defendant boards of education are not competing with Acorn, but are furnishing a service to their communities deemed necessary by those boards. They "compete" in a business sense with the private driver training school in the same fashion as they compete with the private boarding school, the private tutor, the private music or dancing school; or by employing a dentist (sec. 10—22.21) or a physician or surgeon (sec. 10—22.24) or professional nurse (sec. 10—22.23) they compete with the members of the dental, medical or nursing professions; or by purchasing or renting textbooks (sec. 10—22.25) they compete with the bookstores; or by operating a school lunch program (sec. 10—22.26) they compete with the restaurant operators, or

by furnishing free transportation they compete with the private transportation systems. The legislature has furnished an instrument whereby the school board can meet a public need if the board sees fit to use it.

We therefore affirm in all respects the decree of the circuit court of Cook County dismissing the complaint as amended.

*Decree affirmed.*