PINEY BOYD, Individually, and as Admr. of the Estate of John Boyd, Deceased, Plaintiff-Appellant, *v.* RACINE CURRENCY EXCHANGE, INC. *et al.*, Defendants-Appellees.

(No. 55559;

First District—October 17, 1972.

Edwin A. Strugala and Marshall I. Teichner, both of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, (Joseph W. Griffin, D. Kendall Griffith, and Jonathan J. Sammuels, of counsel,) for appellees.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This was a suit by plaintiff Piney Boyd against defendants Racine Currency Exchange, Inc. and Blanche Murphy to recover damages for the wrongful death of John Boyd, plaintiff's husband. On defendants' motion, the suit was dismissed by an order in which the trial court found that the complaint did not state a cause of action. The issue is whether the dismissal was error. Resolution of this issue depends on the legal sufficiency of the facts which plaintiff alleged in her three-count complaint.

## I.

A. The facts alleged in Count I.

Racine Currency Exchange, Inc., is a corporation doing business under the laws of Illinois at 7349 South Racine, Chicago. Blanche Murphy is one of its servants, employees and agents. John Boyd, plaintiff's decedent, was a frequent and regular customer of Racine Currency Exchange. On April 27, 1970, Boyd went to the currency exchange to transact business for the fee or charge which defendants made for their services. Defendants, having invited him there to do business, owed John Boyd the duty to exercise reasonable care for his safety, under all circumstances, including knowledge by defendants that because of the nature of their business, they kept large sums of money on their premises. This money, at all times, was a lure, temptation and enticement to persons with criminal motive and who intended, by armed robbery, to seize and steal defendants' money, if necessary, by the use of force and violence.

On April 27, 1970, John Boyd entered defendants' place of business. As he did so, an armed robber placed a pistol against his right temple. Blanche Murphy, an employee of Racine Currency Exchange, was then behind a protective bullet-proof glass window and partition. The armed robber, holding the gun at Boyd's temple, told Blanche Murphy to open the door or he would kill Boyd; that he would shoot Boyd if she did not give him the money. Blanche Murphy refused and failed to open the door or give the money to the armed robber. Instead, she fell to the floor to protect herself and the money that belonged to her employer, defendant Racine Currency Exchange. The armed robber then and there immediately shot John Boyd in the head and killed him.

By their conduct, defendants were guilty of the following wrongful acts or omissions: (a) willfully and wantonly, with conscious indifference to and reckless disregard for the consequences, although they knew or should have known of the unreasonable risk of grave harm to John Boyd, refused and failed to open the door of their enclosed partition or give money to the armed robber; (b) willfully and wantonly, with conscious indifference to and reckless disregard for the consequences, adopted a policy, knowledge of which they deliberately withheld from and refused to divulge to its customers, including John Boyd, that their money was to be preserved at all costs, including the safety and lives of their customers.

John Boyd was survived by plaintiff who is his widow, and by two minor daughters, his only heirs at law and next of kin, all of whom sustained pecuniary damage as a result of his death. Plaintiff prays judgment for compensatory damages from defendants, jointly and severally, in the sum of $250,000 and for punitive damages in the sum of $50,000, at defendants' costs.

B. The facts alleged in Count II.

On April 27, 1970, when John Boyd was in the Racine Currency Exchange, defendants were guilty of one or more of the following wrongful acts or omissions: (a) carelessly and negligently failed to instruct employees, including Blanche Murphy, regarding the conduct necessary and proper under the circumstances described in this complaint, to the end that the safety and lives of customers, including John Boyd, would not be exposed unnecessarily and unreasonably to grave risk of serious and substantial harm; (b) carelessly and negligently employed a person (defendant Blanche Murphy) who, neither by training, education, experience, nor by reason of her abilities, was competent to fulfill the responsibilities of such employment; (c) carelessly and negligently failed to furnish its employees with guidelines or rules of conduct, for circumstances described in the complaint, and thereupon [defendant Racine Currency Exchange] wholly abandoned its responsibilities and breached its duties of reasonable care to John Boyd; (d) and alternatively, carelessly and negligently failed to inform its customers, including John Boyd, of the policy adopted by defendants to preserve their money at all costs, even at the risk of sacrificing the safety and lives of their currency exchange customers. Plaintiff prays for judgment as compensatory damages against defendants, jointly and severally, in the sum of $250,000, at their costs.

C. The facts alleged in Count III.

As a direct and proximate result of the willful, wanton and negligent acts and omissions of defendants, as alleged in Counts I and II, plaintiff, individually and as the administrator of the estate of John Boyd, has expended time and monies in connection with John Boyd's terminal illness, his death, burial, administration of his estate and other matters related thereto. Plaintiff has incurred expenses for which she has become personally liable under the Family Expense Act (Ill. Rev. Stat. 1969, ch. 68, par. 15), in connection with the administration of John Boyd's estate, his terminal illness, medical, hospital, funeral and burial expenses. Plaintiff prays judgment against defendants, jointly and severally, in the sum of $1,500, at their cost.

II.

In our judgment, plaintiff's complaint, particularly Count I, states a cause of action. Therefore, its dismissal was error. This conclusion finds support in the evolving principles of tort law.

■■ It is said in the law of torts that a possessor of land who holds it open to the public for a business purpose is liable to those who while on the land are physically harmed by accidental, negligent, or intentionally harmful acts of third persons or animals, if the possessor fails to

exercise reasonable care to discover that such accidental, negligent or intentional acts are being done or are likely to be done, or fails to give a warning adequate to enable members of the public to avoid the harm, or otherwise to protect them against it. (Restatement, Second, Torts § 344; Annot. 10 A.L.R.3d 619, 633 (1966).) This holding out of the land, the business invitation, creates a relation that imposes on the possessor a duty to protect the invitee. For example, to a bank, savings and loan association or currency exchange, a member of the public who accepts the invitation to do business is a customer, one to whom the institution owes the duty to use reasonable care for his protection. (*Sinn v. Farmers' Deposit Savings Bank* (1930), 300 Pa. 85, 89, 150 A. 163; Restatement, Second, Torts § 314A.) This duty can, under some circumstances, require protection of the invited person from a criminal attack by a third person. (*O'Brien v. Colonial Village, Inc.,* 119 Ill.App.2d 105, 255 N.E.2d 205; *McFadden v. Bancroft Hotel Corp.,* 313 Mass. 56, 46 N.E.2d 573; compare *Nigido v. First National Bank of Baltimore* (1972), 264 Md. 702, 288 A.2d 127; see Annot. 29 A.L.R.2d 907 (1952); Restatement, Second, Torts § 314A, Comment *d*; § 302B, Comment *e*, Illustration 4.) A possessor of land, however, is not an insurer of the safety of those who accept his business invitation and come on the property. His liability, when that is incurred, is based on fault. (*Shelton v. City of Chicago,* 42 Ill.2d 468, 475, 248 N.E.2d 121; *Winn v. Holmes* (1956), 143 Cal.App.2d 501, 299 P.2d 994.) It is said in general, that a possessor of land is not accountable for the criminal acts of third persons under any and all circumstances. (*Burgess v. Chicopee Savings Bank* (1957), 336 Mass. 331, 145 N.E.2d 688.) But the rule of negligence that has application to this case is the one expressed in *Heaven v. Pender* (1883), 11 Q.B. 503, 509:

> "* * * whenever one person is by circumstances placed in such a position with regard to another that everyone of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."

■■ When a possessor of land opens it to the public and while others are there a confrontation with an armed robber takes place, the risk of grave injury or death to others is such that the possessor does not have the right to take any measure he chooses to frustrate the robber if the measure disregards the safety of those who may be present. (*Genovay v. Fox* (1958), 50 N.J. Super. 538, 558, 143 A.2d 229; rev'd on other

grounds (1959), 29 N.J. 436, 149 A.2d 212.) The value of human life and the importance of an individual's right to be free from serious bodily injury weigh so heavily on the scales of justice that they cannot be disregarded simply because a possessor of land acts to frustrate a felony and save his property from loss. *Genovay v. Fox, supra.*

In this case, plaintiff alleges that on April 27, 1970, and at defendants' invitation, John Boyd went to the Racine Currency Exchange. In plain view of defendants, "[a]n armed robber * * * placed a firearm or pistol against the right temple of plaintiff's decedent, and then stated to the defendant Blanche Murphy, who was behind [a] protective bullet-proof glass window and partition, 'Open the door or I'll kill him,' and 'I'll shoot him if you don't give me the money,' or words of similar import and effect." Blanche Murphy, servant, employee and agent of Racine Currency Exchange "[r]efused and failed to open the door or give the money to the armed robber, instead falling to the floor to protect herself and preserve the money, and the armed robber then and there immediately shot plaintiff's decedent in the head."

■■ In determining whether these allegations state a cause of action, because of defendants' motion to dismiss, we must accept all the properly pleaded facts as true. (*Acorn Auto Driving School, Inc. v. Board of Education,* 27 Ill.2d 93, 96, 187 N.E.2d 722; *Follett's Illinois Book and Supply Store, Inc. v. Isaacs,* 27 Ill.2d 600, 603, 190 N.E.2d 324.) When we do, it becomes evident that as possessors of land they had opened to the public, defendants were placed in a position from which they should have recognized at once that if they did not use ordinary care and skill they would have increased or caused danger to plaintiff's decedent who, in their presence, was being threatened with injury by an armed robber. (*Heaven v. Pender, supra.*) Therefore, this is not a case in which it is alleged that defendants were negligent in failing to prevent a robbery. (Compare *Altepeter v. Virgil State Bank,* 345 Ill.App. 585, 104 N.E.2d 334.) This is a case in which it is alleged that defendants, with knowledge that a robber was on their land, with knowledge that the armed robber was threatening plaintiff's decedent with injury, elected to preserve their money and forfeit the life of a customer.

■■ The essential element of negligence is exposure of another to unreasonable risk of harm. (See *Wintersteen v. National Cooperage and Woodenware Co.,* 361 Ill. 95, 197 N.E. 578; *Kahn v. James Burton Co.,* 5 Ill.2d 614, 126 N.E.2d 836; Harper and James, The Law of Torts, § 16.9 (1956).) It cannot be doubted that while John Boyd was in the Racine Currency Exchange, at defendants' invitation, they owed him the duty to exercise due care for his safety, a duty that required defendants to

146

refrain from any omission that caused or increased the risk of harm to him. See Annot. 10 A.L.R.3d 619, 642; Restatements, Second, Torts §§ 302B, 449.

Whether what defendants did or did not do proximately caused the injury that befell plaintiff's decedent, whether Blanche Murphy had the time so she could, under the circumstances alleged, exercise the kind of judgment expected of a person of ordinary prudence, were questions of fact which, from all the evidence, must be decided by a trier of the facts, judge or jury. (Compare *Noll v. Marian* (1943), 347 Pa. 213, 32 A.2d 18; see *Madison v. Reuben*, 128 Ill.App.2d 11, 262 N.E.2d 794; *McCann v. City of Waukegan*, 83 Ill.App.2d 284, 227 N.E.2d 558.) A trier of the facts may find, on all the evidence, that defendants, in the moment when plaintiff's decedent was threatened by the armed robber in their presence, could have done something but did nothing to protect their customer from physical harm. On the other hand, a trier of the facts may find from the evidence that defendants did all that a reasonable and prudent person would have done under the circumstances.

■■ The complaint contained allegations sufficient to enable plaintiff to prove facts which would have entitled her to recover from the defendants. A cause of action should not be dismissed on the pleadings unless it clearly appears that under them no set of facts can be proved which would entitle the plaintiff to a recovery. *Herman v. Prudence Mutual Casualty Co.*, 92 Ill.App.2d 222, 235 N.E.2d 346; compare *Kita v. Young Men's Christian Association of Metropolitan Chicago*, 47 Ill.App. 2d 409, 198 N.E.2d 174.

### III.

The judgment is reversed and the cause is remanded with directions that the trial court overrule defendants' motion to dismiss plaintiff's complaint and restore the cause to the docket for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

STAMOS, P. J., and SCHWARTZ, J., concur.