DR. ARTURO RIOS *et al.*, Plaintiffs-Appellant, *v.* NOLAN B. JONES *et al.*, Defendants-Appellees, Cross-Appellants.

(No. 59965;

First District (1st Division)—December 27, 1974.

Harry G. Fins and Harold A. Harris, both of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and George Klumpner, Assistant Attorneys General, of counsel), for appellees.

Mr. PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiffs are 62 physicians employed by the Department of Health of the State of Illinois. They are all foreign-born United States citizens who received degrees of Doctor of Medicine in foreign countries and were licensed to practice medicine in those countries.

In 1951, the Medical Practice Act was amended (Ill. Rev. Stat. 1951, ch. 91, par. 14a) to provide that the Department of Registration and Education might in its discretion issue without examination a limited license to practice medicine in all its branches to any applicant who could furnish the Department with satisfactory proof that he was 21 years of age or over, of good moral character, had had such training at schools which were reputable and in good standing as under the circumstances the Department should deem sufficient and had been appointed a physician in a hospital maintained by the State. The limited license would entitle a physician to practice medicine only in the hospital designated on his license and in any case under the supervision of one of the medical officers of the hospital who was regularly licensed under the Act and under the regulations established by the hospital.

In 1957, the section was amended to include the requirement that the applicant serve a 1-year internship at the hospital approved by the Department. It also provided that the holder of a State hospital permit (also referred to in the Act as a limited license) could practice medicine in all its branches in any hospital or facility maintained by the Department.

The section was again amended by Public Act 77—2757 which became effective on September 1, 1972, and provided, in part, that all State hospital permits in effect on the effective date of the amendment and issued before July 1, 1973, would expire on July 1, 1973. Each person holding a permit could apply for a renewal subject to certain requirements which included passing an examination. Whereas the previous section had in effect made the limited license permanent, the amendment provided that each renewal would be for 1 year, that the Department could not issue more than two renewals to each holder and that the Department had no authority to issue a State hospital permit for an indefinite period.

All of the plaintiffs received State hospital permits or limited licenses before July 1, 1965. Each of them served a 1-year internship in an ap-

proved hospital; each was required to pass a physician's civil service examination; and each of them has received periodic promotions and increases in salary. They were informed by the defendants, the Directors of the Department of Personnel, Registration and Education and Mental Health that, unless they took and passed academic medical examinations pursuant to Public Act 77—2757, they would lose their employment and civil service status.

The plaintiffs filed a complaint seeking to enjoin the defendants from enforcing the Act's requirement that they take an examination. The trial court entered an order enjoining the defendants from enforcing the Act only as to those plaintiffs having 10 years or more of civil service, holding the Act unconstitutional as to them, and denied injunctive relief as to the remainder. The plaintiffs who were denied relief have appealed and the defendants have cross-appealed from the order granting relief to those plaintiffs having 10 years or more of service.

Section 13a of the Medical Practice Act (Ill. Rev. Stat. 1973, ch. 91, par. 14a) provides, in part:

> "As a condition precedent to the renewal of any state hospital permit on July 1, 1974 or on any renewal date thereafter, the permit holder shall be required to show proof of having passed an examination given by the Department of Registration and Education or to have passed an examination deemed by the Department to have been at least equal in all substantial respects to the Department's examination. The Department shall have no authority to issue a renewal of a permit to an individual who has failed to pass this examination."

But the next sentence of the Act provides that "[a]n applicant for renewal of a state hospital permit must submit proof to the Department of Registration and Education that he is pursuing such course of instruction and study as will provide the applicant with the necessary qualifications to successfully pass an examination for the issuance of a license to practice medicine in all of its branches." The plaintiffs contend that it is unclear under these provisions whether a license will issue if the applicant passes an examination or if he merely submits proof that he is pursuing a course of study that will provide him with the necessary qualifications to pass the examination. Consequently, the plaintiffs argue, the Act is void for vagueness.

■■ In their brief the defendants said:

> "The plain and obvious meaning of the statute is that all persons who apply for the renewal of their hospital permits at any time between the effective date of the Act and July 1, 1974, must submit with their application a proof of study. A different condition

precedent for renewal applies after July 1, 1974—namely, the applicants must show proof of successfully passing an examination given by the Department of Registration and Education or equal in all substantial respects to the Department's examination." Such a construction reads into the Act language which, obviously, is not present. It is the function of the legislature, not the courts, to prescribe the necessary qualifications to practice medicine. It is the function of the courts to construe the Act of the legislature to give effect, subject to constitutional limits, to the intent of the legislaure. In so doing, however, the courts cannot inject provisions not found in a statute, however desirable or beneficial they may be. *Droste v. Kerner*, 34 Ill.2d 495, 504, 217 N.E.2d 73.

In oral argument the Assistant Attorney General said that the examinations referred to in the amendment are those leading to a general license. Why then should the first examination referred to be qualified only by the requirement that it be prepared or approved by the Department, while the other examination following a certain course of study is qualified as one that would grant a "license to practice medicine in all of its branches"? It could be argued that the Act refers to two separate types of examination. Under the defendants' interpretation, the phrase "to practice medicine in all of its branches" means two different things in the same section of the Act.

Under the first paragraph of section 13a an applicant is required to show that he has already completed training at a school approved by the Department and that he has served a 1-year internship in a hospital. It is unreasonable to assume that the school referred to is anything but a medical school. That being so, the requirements for a limited license—graduation from a medical school and a 1-year internship—are the same as the requirements for a general license. If the defendants' interpretation is correct, what further course of study and instruction must an applicant for a limited license show that he *is* pursuing since he has graduated from a medical school and has completed a 1-year internship?

We believe that it is just as reasonable to construe the Act to mean that an applicant must pass one examination and also provide proof that he is pursuing a course of study that would enable him to pass another examination that in turn would entitle him to a general license. It is particularly significant that a limited license has a maximum life of 2 years under the amendment. Thus, after 2 years, what is the holder of a limited license who is a graduate of a medical school with a 1-year internship to do? The answer is obvious: He either gets a general license to practice medicine or he seeks some other line of endeavor. The next question is: How can he get a general license?

Section 5 of the Act (Ill. Rev. Stat. 1971, ch. 91, par. 5) sets out the minimum standards of professional education that must be met before an applicant may be examined for a general license to practice medicine. Section 5, subsection 1(b), provides that the applicant must be a graduate of a medical college, which in turn must meet certain requirements, and he must have completed 12 months' clinical training in a hospital. Section 5, subsection 1(c), provides that if the applicant is a graduate of a medical school in another country he must have been a resident of this State for 5 years before matriculating in the foreign school, and after testing, he must have received internship training and a medical degree from an Illinois medical school. Since the plaintiffs were not residents of Illinois before attending medical school, they do not come within the purview of section 5, subsection 1(c).

As we have pointed out, section 5, subsection 1(b), refers to medical schools, and section 5, subsection 1(c), refers to foreign medical schools. We construe section 5, subsection 1(b), therefore, to mean medical schools in this country. Thus, the plaintiffs at present do not qualify for examination under section 5, subsection 1(b). The only other section under which a graduate of a foreign medical school may qualify for a general license is section 13 (Ill. Rev. Stat. 1973, ch. 91, par. 14), which provides that the Department may issue a license without examination to a person who has been licensed in another country. The requirements for a general license in the foreign country must be deemed by the Department to be the equivalent of the requirements for a general license in this State, and the foreign country in which he was licensed must accord the same privilege to persons licensed in this State. The burden of proof is on the applicant, and the decision is within the discretion of the Department. Consequently, if the Department exercised its discretion against them, the plaintiffs could qualify for a general license under the Act only by resuming their education at the medical school level in this country, assuming their acceptance by the school. Their acceptance is by no means assured.

■■ In *Acorn Auto Driving School, Inc. v. Board of Education,* 27 Ill.2d 93, 98, 187 N.E.2d 722, the court said:

> "Statutes which are so incomplete, vague, indefinite and uncertain that men of ordinary intelligence must necessarily guess at their meaning and differ as to their application, have uniformly been declared unconstitutional as denying due process. [Citations.]"

And in *Baggett v. Bullitt,* 377 U.S. 360, 367, 12 L.Ed.2d 377, 382, 84 S.Ct. 1316, the United States Supreme Court said:

> "[A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning

and differ as to its application violates due process of law. [Citations.]"

■■ Whether the construction given by the defendants truly represents the legislative intent is debatable but immaterial. The point to be made is that the Act is susceptible of more than one interpretation. And under the interpretation given by the defendants an applicant is still faced with the quandary of determining what further "course of instruction and study" a graduate of a medical school with a 1-year internship must pursue. We therefore judge that this section is so uncertain that men of ordinary intelligence must guess at its meaning and differ as to its application and that, therefore, it denies due process.

The plaintiffs also contend that they possessed, in both their licenses and employment, a "property right" which the amendment deprives them of without due process. The main thrust of the defendants' argument is that, although the plaintiffs' employment concededly represents a property right, the State may regulate property rights through its police power, which it will reasonably exercise through the examination required under the Act. There can be no quarrel with the defendants' position that the State may require licensing of physicians under its obligation to safeguard the public health. And there can be no quarrel with the defendants' argument that an examination represents a reasonable exercise of the police power. But the defendants have cited no case factually apposite that would support a requirement that one who possesses a "property right" of employment may be required to submit to an examination in order to retain that "property right" of employment. On this point the defendants rely principally on *Dent v. West Virginia*, 129 U.S. 114, 32 L.Ed. 623, 9 S.Ct. 231. In that case the statute required every physician to obtain a certificate from the state board of health that he was a graduate of a reputable medical college; or that he had practiced medicine for 10 years in the state; or that he had passed an examination by the board. The defendant had been practicing medicine for 6 years. He had a diploma from a medical college which the board had rejected when he applied for a certificate. The Supreme Court upheld the statute, which, passed in 1882, was apparently the first statute in West Virginia that dealt with the licensing of physicians. Licensing laws must begin sometime. It is one thing to require a license initially; it is quite another to require one who already has a license to pass another examination to keep it. The *Dent* case would be authority here if the defendant had been a holder of a State license at the time of the passage of the Act. The defendants also cite certain language in *Reetz v. Michigan*, 188 U.S. 505, 510, 47 L.Ed. 563, 23 S.Ct. 390. That case involved a statute, passed in 1889, which required a diploma from a medical school

or a satisfactory examination. But, most important, the statute also provided that an applicant should be given a certificate of registration if he could give sufficient proof to the board that he had already been registered as a physician under the previous statute. The Board of Registration found that the defendant had failed to submit sufficient proof of a previous registration. The case hinged on the question of whether the Act constituted an unlawful delegation of judicial power to the board. If the defendants' argument is correct, then a statute requiring all doctors practicing under a general license to submit to another examination would be constitutionally permissible, and so would an Illinois Supreme Court rule requiring all lawyers to submit to another bar examination.

The trial court held that *Perry v. Sindermann*, 408 U.S. 593, 33 L.Ed.2d 570, 92 S.Ct. 2694, was dispositive of the issues before it. In that case the respondent was employed by a State college system for 10 years, the last 4 as a junior college professor under a series of 1-year written contracts. The regents declined to renew his employment without an explanation or a prior hearing. The teacher's complaint alleged that he had not been retained because of his public utterances and, in addition, that he had an implied contract of employment. The Supreme Court upheld a reversal of summary judgment for the regents, reasoning that if the teacher could prove the allegations of his complaint that he was not being retained because of his exercise of a constitutional right, he would be entitled to retention; and, if he could establish the existence of an implied contract, due process required that he be given a hearing before termination of employment.

We believe that the facts of this case are even stronger than *Perry* since that case involved an implied contract of employment, which the court recognized as a property right. It was conceded by all parties in *Perry* and in *Board of Regents v. Roth*, 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701, decided the same day, that public employment under tenure provisions constituted a property right which could not be impaired without due process of law. We agree with the trial court's conclusion that the *Perry* case was controlling here but disagree with its holding that it was applicable only to those doctors having 10 years' or more service. The fact that the teacher in the *Perry* case had 10 years' employment was accidental and had no bearing on the decision. The defendants seek to distinguish *Perry* from this case because, they say, *Perry* did not involve the police power. We are not prepared to accept the proposition that the State's control of the schools is necessarily apart from its general police power. But assuming that it is, the defendants' argument is a distinction without a difference.

All of the plaintiffs had passed examinations and had received pro-

motions and increases in wages pursuant to the provisions of the Personnel Code. They are, therefore, entitled to the protection of the civil service laws. Section 8b of the Personnel Code (Ill. Rev. Stat. 1973, ch. 127, par. 63b108b) provides for "tenure on the basis of merit and fitness." Section 8b.16 provides for discharge only after a hearing and only for good cause. The identical issue before us was present in *People ex rel. Baird v. Stevenson*, 270 Ill. 569, 571, 110 N.E. 814, and the question was thus posed:

> "'Can the State Civil Service Commission require a person already by law in the classified civil service of the State without prior examination, to take an examination which will test his or her competency, efficiency and qualifications to perform the duties of the office in which he or she is employed, and discharge such person for failure and refusal to take such an examination?'"

The court answered the question as follows (270 Ill. 569, 572):

> "There is nothing in the statute which authorizes the State Civil Service Commission to require a member of the classified State civil service to take an examination before the commission, whether the officer or employee became a member of such classified service through an entrance examination or by the express terms of the statute declaring that those who held offices or places of employment when the amended act took effect should become members of the classified State civil service without original examinations. All are secured in their positions by a prohibition against removal except upon written charges and a hearing with an opportunity to defend against the charges."

We judge that the *Stevenson* case is clearly applicable and controlling here.

■■■ The defendants also maintain that the legislature intended that the amendment be applied retroactively. It is the general rule that statutes will not be construed retroactively unless express language provides otherwise. (*Stigler v. City of Chicago*, 48 Ill.2d 20, 24, 268 N.E.2d 26.) And in any event, a statute may not be given retroactive application if its effect will be the impairment of a vested right. (*Hogan v. Bleeker*, 29 Ill.2d 181, 190, 193 N.E.2d 844.) Therefore, assuming the statute were sufficiently clear to satisfy constitutional requirements, it could not apply to the plaintiffs. Although the case was not expressly decided on constitutional grounds, we think it appropriate to cite *Schleifer v. Department of Registration and Education*, 326 Ill.App. 259, 61 N.E.2d 398 (abstract opinion). The petitioner graduated in 1938 from the University of Vienna Medical School, which was deemed reputable and in good standing by the Department of Registration and Education.

In 1941, the Department passed a resolution suspending recognition from all medical schools except those in the United States and Canada. The rule was made retroactive to 1936. In 1942, the petitioner completed his internship at a hospital in Chicago. The appellate court reversed an order denying his petition for a writ of mandamus and held:

"Under the circumstances it would appear that in order to become licensed to practice medicine in this State, petitioner would have to repeat an entire medical course of four years in a school recognized by the Department because of the rules and regulations promulgated. It seems to us that, under the existing circumstances, this renders the rules unreasonable and arbitrary."

The same prospect that faced the petitioner in *Schleifer*—beginning all over in a medical school—confronts the plaintiffs here if the retroactive application of the amendment is upheld as a reasonable exercise of the police power.

The plaintiffs filed an amendment to the complaint which contended that they were entitled to a license by eminence under section 13 of the Medical Practice Act (Ill. Rev. Stat. 1973, ch. 91, par. 14). The trial court dismissed the amendment and that ruling is assigned as error by the plaintiffs. There is no showing that the plaintiffs ever applied for a license under section 13. They therefore failed to exhaust their administrative remedies and the trial court's ruling was correct. (See *Chicago Welfare Rights Organization v. Weaver*, 56 Ill.2d 33, 305 N.E.2d 140.) The Federal cases cited by the plaintiffs are not persuasive.

For the foregoing reasons we conclude that the statute may be applied only prospectively and not to the plaintiffs; that to apply it to the plaintiffs would constitute an unconstitutional abridgment of a vested right; and that the statute is unconstitutionally vague. In view of our holding, it is unnecessary to pass on the plaintiffs' motion to dismiss the defendants' cross-appeal or the other arguments of the plaintiffs.

That part of the judgment granting relief to all the plaintiffs having over 10 years' tenure is affirmed; that part of the judgment denying relief to the other plaintiffs is reversed.

Judgments affirmed in part and reversed in part.

BURKE and GOLDBERG, JJ., concur.