(No. 41336.—

L. C. SHELTON *et al.,* Appellees, *vs.* THE CITY OF CHICAGO *et al.,* Appellants.

*Opinion filed May 28, 1969.*

Ward, J., took no part.

RAYMOND F. SIMON, Corporation Counsel, of Chicago, (MARVIN E. ASPEN and RONALD S. COPE, Assistants Corporation Counsel, of counsel,) for appellant City of Chicago.

JOHN J. STAMOS, State's Attorney, of Chicago, (EDWARD J. HLADIS, Chief of Civil Division, and NICHOLAS F. TROVATO, DEAN H. BILTON, and RONALD BUTLER, Assistant State's Attorneys, of counsel,) for appellant County of Cook.

EPTON, McCARTHY, BOHLING & DRUTH, of Chicago, (BERNARD E. EPTON and ALAN R. MILLER, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The two personal injury actions involved in this case were consolidated in the circuit court of Cook County. The defendants in each action are the City of Chicago and the County of Cook, and each action was brought to recover damages for personal injuries alleged to have been suffered as a result of mob action which took place in July of 1966. The plaintiff Shelton alleged that he was injured when he was shot by Chicago policemen who were endeavoring to

suppress mob action, and the plaintiff Detres alleged that he was a passenger in an automobile which was set upon by a mob and suffered injuries when he was struck by flying glass. In each case the City and the County filed motions to dismiss the complaint which alleged, among other grounds, that the statutes upon which the actions were based had been repealed.

Affidavits filed by attorneys for the defendants showed that more than 200 actions were pending against the City and the County based upon the statutes involved in this case. In his order denying the motions to dismiss, the trial judge found, under Rule 308 of this court (Ill. Rev. Stat. 1967, ch. 110A, par. 308) that questions of law were involved with respect to which "there is substantial ground for difference of opinion" and that an immediate appeal from the interlocutory order denying the motions to dismiss might materially advance the ultimate determination of the litigation. Thereafter the appellate court granted the defendants' application for leave to appeal under that Rule. Subsequently, this court granted the motion of the City and the County to transfer the appeal from the appellate court to this court pursuant to Rule 302(d). Ill. Rev. Stat. 1967, ch. 110A, par. 302.

The following questions were certified by the trial court:

"(1) Whether the County, pursuant to Section 25—3 of the Criminal Code of 1961, as amended (Ill. Rev. Stat. 1965, ch. 38, § 25—3), is liable for mob violence occurring in cities within the county of over 5,000 persons, and, if so, whether said statute is constitutional;

"(2) Whether Section 1—4—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1965, ch. 24, § 1—4—8) is constitutional because it applies only to cities of over 5,000 in population and, therefore, according to the City, constitutes special legislation as to that class;

"(3) Whether the 'Local Governmental and Governmental Employees Tort Immunity Act,' Chapter 85, § 2—

103, 2—109, 2—2—2 and 4—102 (Ill. Rev. Stat. c. 85, § 2—103, 2—109, 2—2—2 and 4—102 (1965) passed on August 13, *1965*, and thus before this cause of action arose, repealed by *implication* the two statutes on which the complaints are based;

"(4) Whether acts passed by the *1967* Legislature, Act 815 and Act 1283, repeal both Section 25—3 of the Criminal Code of 1961 as amended (Ill. Rev. Stat. 1965, ch. 38, section 25—3) (applicable to the County) and Section 1—4—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1965, ch. 24, § 1—4—8) (applicable to the City) and *retroactively* defeat this cause of action, which arose and was filed in this Court prior to the enactment of this *1967* legislation."

An affirmative answer to the last of the certified questions would eliminate all of the others, and we therefore consider that question at once. In 1967 the General Assembly enacted statutes which expressly repealed section 1—4—8 of the Illinois Municipal Code (House Bill 598), and section 25—3 of the Criminal Code (House Bill 1856), which are the two statutes upon which liability in these cases is predicated. Both of the repealing acts were approved by the Governor. (Laws of 1967, Vol. 2, pp. 3286, 2365.) At the same session, however, the General Assembly also amended section 1—4—8 of the Illinois Municipal Code (House Bill 958). This bill was also approved by the Governor (Laws of 1967, p. 3724), and it is contended that this bill, which was approved by the Governor on September 7, 1967, operated to re-enact the repealed section of the Municipal Code, despite the express repeal contained in House Bill 598, which was approved on August 21, 1967.

We find it unnecessary, in the circumstances of this case, to consider what, if any, significance should be accorded to the fact that the amendatory act was approved by the Governor more than two weeks after he had approved the repealing act. The amendatory act was one of a package of 174

bills which were prepared by the Legislative Reference Bureau to bring various statutes into conformity with the new Judicial Article of the Constitution, to delete obsolete terms, or to combine or rearrange sections, without making substantive changes. The single description applicable to all 174 bills which was contained in the Legislative Synopsis and Digest was as follows:

> "HB-915 TO 1089 INCL. MC DEVITT AND PARKHURST
>
> Amends, combines, resections or deletes terms in the following Acts or sections, making no substantive change:" (Here followed a listing of the individual bills by number, together with a reference to the section or sections affected by each bill.)

It cannot, we think, be fairly contended that the General Assembly intended, by a bill which purported to make no change of substance, to re-enact the repealed provisions of section 1—4—8.

If further indication of the legislature's intention to repeal section 1—4—8 of the Municipal Code was required, it is found in House Bill 2810, which was approved August 17, 1968. This bill, which was passed after the circuit court had denied the motions to dismiss the complaints in the present cases, again expressly repealed section 1—4—8. It was passed by a two-thirds vote in each house, and it contained the following emergency clause: "Section 2. Whereas some courts have, contrary to the real intention of this General Assembly, construed House Bill 958 as a reenactment and reinstatement of Section 1—4—8 of the 'Illinois Municipal Code' despite the repeal of that Section by House Bill 598, therefore an emergency exists and this Act shall take effect upon its becoming a law." Ill. Rev. Stat., 1968 Supp., p. 98.

We conclude that the legislative purpose to repeal the statutes upon which these actions are based is unmistakable. Even so, the plaintiffs argue, the repeals were not intended and should not be construed to apply retroactively to bar

their actions. To establish this contention they rely upon section 4 of the Statutory Construction Act, which provides: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." Ill. Rev. Stat. 1967, ch. 131, par. 4.

If this statutory expression of legislative intention was before the court for the first time, the plaintiffs' contention would not lack persuasiveness, for the statute refers to the effect of express repeals upon claims that have arisen. But we are not at liberty to disregard the earlier decisions of this court construing the Statutory Construction Act, for those decisions must have entered into the General Assembly's understanding of the meaning of that Act.

At least since the decision of this court in *People ex rel. Eitel* v. *Lindheimer* (1939), 371 Ill. 367, it has been consistently held that the Statutory Construction Act does not apply to express repeals of special statutory remedies. In *Board of Education* v. *Nickell,* 410 Ill. 98, 103, we said: "The effect of the Statutory Construction Act was thoroughly considered in *People ex rel. Eitel* v. *Lindheimer,* 371 Ill. 367, where this court said: 'The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal.'" And again in *Hogan* v. *Bleeker,* 29 Ill.2d 181, 185: "We have held that

the legislature has the power to withdraw jurisdiction of the courts over statutory causes of action and the exercise of that power leaves all such causes of action and pending suits where the repeal finds them. (*People ex rel. Eitel* v. *Lind-heimer*, 371 Ill. 367; *Orlicki* v. *McCarthy*, 4 Ill.2d 342.) This is true despite the Statutory Construction Act (Ill. Rev. Stat. 1961, ch. 131, par. 4) which has been held not applicable to repeals. *People* v. *Lindheimer*, 371 Ill. 367; 45 Ill. L. Rev. 111."

We are unable to accept the plaintiffs' contention that because their injuries had occurred and their pending actions had been commenced while the repealed statutes were in effect, their rights were vested, and could not, as a matter of constitutional law, be retroactively defeated by the repeals. The remedy sought to be asserted is clearly, in the language of our earlier decisions, a special statutory remedy. There is in these cases no element of contract, nor is there any suggestion of conduct by the plaintiffs undertaken in reliance upon the repealed statutes. (See Smith, Retroactive Laws and Vested Rights, 6 Texas L.R. 409, 429.) No "vested right" is involved. The legislature, which for a time had permitted a remedy against subordinate governmental units for damage resulting from mob violence, has withdrawn that remedy.

What was said in 1858 by Chief Justice Taney in an analogous situation, is pertinent here: "It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the

public requires it." *Beers* v. *Arkansas,* 20 How. (U.S.) 527, 529, 15 L. Ed. 991, 992.

Finally, the plaintiffs argue that the defendants should be held liable at common law, apart from any statute. Their argument recognizes that "there are no cases at common law dealing with municipal liability for riot damage", but they suggest that the erosion of the doctrine of governmental immunity, and the simultaneous expansion of concepts of strict liability, warrant the recognition of a common law cause of action. They emphasize the injustice of permitting the losses that result from riot damage to person or property to be borne by those innocent victims upon whom they chance to fall. Those losses, they suggest, should be broadly distributed. And they urge that the imposition of fiscal responsibility upon municipal governments would stimulate community concern for the maintenance of law and order and the alleviation of undesirable social conditions, and thus tend to reduce the likelihood of future riots.

Insofar as this argument emphasizes the desirability of alleviating the loss suffered by one who is without fault, it carries a strong appeal. But there are other considerations that must be taken into account. One who has suffered riot damage has a remedy against the persons who inflicted the injury. That remedy may be of little practical value in many cases, but the same is true of the victim of a rape, a robbery, or a hit-and-run driver. It is hard to say that one group of innocent victims of criminal conduct is more deserving of compensation from the community than the other. Despite peripheral moderations, fault remains the cornerstone of the common law of torts. The particular units of local government upon which liability is sought to be imposed are not directly responsible for the injuries suffered by the plaintiffs in these cases. A legislature is better equipped than is a court to appraise the issues of policy involved in selecting the unit of government upon which to impose an insurer's liability of the type here involved. (See, Sengstock, Mob

476

Action: Who Shall Pay the Price? 44 Journal of Urban Law, 407 (1967); 81 Harv. L. Rev. 653 (1968); 77 Yale L.J. 541 (1968).) And in any case, it would be anomalous for this court to assert a common law right to recover immediately after the legislature has repealed the former statutory remedies.

The order of the circuit court of Cook County overruling the motions to dismiss is reversed, and the cause is remanded to that court with directions to dismiss the complaints.

*Reversed and remanded, with directions.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.