## Wolf *v.* Allegheny County.

Argued February 17, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WIL-KINSON, JR., MANDERINO, MENCER and ROGERS.

*Loyal H. Gregg*, with him *Jones, Gregg, Creehan & Gerace*, and *Edward I. Goldberg*, for appellants.

*John J. Hickton*, with him *D. J. Greenberg*, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 19, 1971:

This is an appeal from the entry of a judgment n.o.v. in favor of defendant, Allegheny County, in an action in which a jury had returned a verdict in the amount of $25,000 in favor of plaintiff property owners.

Plaintiffs' action was founded upon the Act of May 31, 1841, P. L. 415, 16 P.S. §11821, as extended to Allegheny County by the Act of March 20, 1849, P.L.

184, 16 P.S. §11825, which created a cause of action for damages to property as a result of riot.[1]

In entering a judgment n.o.v. the lower court, speaking through Judge WESSEL, concluded:

"In reviewing the law, we are compelled to conclude that the statute dealing with the County of Allegheny with respect to liability must be approached and construed strictly. Therefore, with such a construction, we find the county is not a wrongdoer within the meaning of that Act. Accordingly, we must conclude that the subrogation claim, and in fairness and justice and good conscience, should be placed upon the person who should bear it, that is to say, the wrongdoer who caused the damage and not the County of Allegheny.

"[T]he plaintiffs have been paid property damages by their own insurance companies, and . . . subrogation under the Pennsylvania Insurance Act, as amended by the Act of August 23, 1961, P. L. 1081, Subsection 3, makes inapplicable subrogation claims for damages as

---

[1] The Act of 1841 provided in relevant part: "In all cases where any dwelling house or other building or property, real or personal, has been or shall be destroyed, within the county . . . in consequence of any mob or riot, it shall be lawful for the person or persons interested in, and owning such property, to bring suit against the said county where such property was situated, and being for the recovery of such damages as he or they sustained by reason of the destruction thereof, and the amount which shall be recovered in said action shall be paid out of the county treasury, on warrants drawn by the commissioners thereof, who are hereby required to draw the same as soon as said damages are finally fixed and ascertained." It was repealed by the Act of July 17, 1970, P. L.    Act No. 167, effective immediately. The Act of 1849, which had extended the provisions of the Act of 1841 to Allegheny County, had previously been repealed by the Act of July 31, 1968, P. L.    Act No. 304, effective immediately, thus demonstrating a legislative policy to abrogate such a statutory cause of action created during a bygone era and designed to solve problems different from those associated with widespread civil disorder and unrest confronting our Nation today.

a consequence of a riot; . . . under a strict construction of the Act of 1841, as amended, the County is not a 'wrongdoer'. . . ."

In a concurring opinion tracing the development of the doctrine of subrogation, President Judge ELLENBOGEN concluded:

"In the instant case, a number of insurance companies, on the basis of policies for which they collected premiums, have compensated plaintiffs for the damage they have suffered. The plaintiffs have been made whole and are themselves no longer entitled to a right of action according to the language of the Act of Assembly. The insurance companies now seek to stand in the shoes of the property owners against the County of Allegheny. In determining who should bear the loss as between the insurance companies and the people of Allegheny County, we believe the equities dictate that the companies should not be afforded the right of subrogation. They should bear the loss.

"The recent case of Interstate Fire and Casualty Co. vs. The City of Milwaukee, 173 N.W. 2d 187, 45 Wis. 2d 331 (1970) is directly in point. In that case, under circumstances on all fours with the case before us, the Supreme Court of Wisconsin refused subrogation, reversed the trial court, and entered judgment for the City of Milwaukee. The court said at pp. 191-192 that:

" 'Clearly, if the respondents were allowed to recover from the city, they would in a sense be recouping their losses from their insureds. This is because any loss by a city must of necessity be passed on to its residents in the form of increased taxes.

" 'The insureds, as residents of the city, would thus pay not only premiums, but also a portion of their own loss. In paying the losses, the respondents merely discharged their own obligation and not an obligation for which the city was primarily liable as a tort-feasor.

" 'While insurance companies, after receiving their premium, would continually be assured of recovery, the members of the community, who had not caused nor participated in riots, would be forced to bear the risk for which insurance companies had received premiums.'

"We must emphasize here that the County is not a wrongdoer. It committed no wrong which caused the damage in this case. Ordinarily, subrogation can be enforced only against wrongdoers and not against innocent persons.

"The perpetrators of the damage to plaintiffs' building are known. It is these persons, the actual wrongdoers, viz: the persons who burned and pillaged the plaintiffs' property, against whom the insurance companies' right of subrogation may be enforced.

"We are not depriving the insurance companies of the right of subrogation. They still have the right and may enforce it against the proper parties, to wit, the actual wrongdoers."

Upon the issue of the right of an insurer-subrogee to recover under the Acts of 1841 and 1849 against the County of Allegheny, we are in accord with the lower court. And we are not persuaded to a contrary result by the reasoning in a New Jersey decision involving a similar statute relied upon by appellants, *A. & B. Auto Stores of Jones Street, Inc. v. City of Newark*, 103 N.J. Super. 559, 248 A. 2d 258 (1968).

In our opinion, an insurance company having insured property which was damaged or destroyed in consequence of any mob or riot, is not a person ". . . interested in, and owning such property . . ." within the meaning of the Act of 1841; and it is not entitled to have the doctrine of equitable subrogation applied to afford it a right of recovery against the County. Although it might be said that the statute imposes a duty upon the County to protect property from mob

or riot action, its failure to do so cannot be said to make the County a wrongdoer. Its best efforts may have been in vain yet liability attaches under the statute in favor of the person whose property is damaged or destroyed. As to such persons it might be said that the statute was one of strict liability against the county but not because it was necessarily a wrongdoer.

Another matter raised in this appeal, however, does give us concern.[2] Because of the procedure employed and the manner in which this case was tried, we are unable to determine from the record whether plaintiffs —the verdict winners—have or have not fully recovered the losses to which they were entitled according to the jury verdict.

It will be necessary to recite in some detail the history of the trial of this case as background for our concern and for a contention advanced by appellants.

This action was instituted in the name of the property owners as plaintiffs. In answer to plaintiffs' complaint, the County by way of new matter asserted plaintiffs had certain insurance coverages and had received certain insurance payments for their alleged losses to which plaintiffs replied that such new matter was irrelevant and inadmissible in the proceedings. At this point it should be noted that as an exception to the real party in interest rule, Pa. R.C.P. 2002(d) permits actions in the name of the person whose interest has been subrogated, which option cannot be questioned by the defendant. *Spinelli v. Maxwell*, 430 Pa. 478, 243 A. 2d 425 (1968). However, it must also be noted that the verification to plaintiffs' complaint must be made

---

[2] Appellee here, County of Allegheny, attempts to raise the issue of the correctness of the lower court's ruling that the repeal of the Act of 1849 (*see* footnote 1) did *not* extinguish plaintiffs' cause of action. As appellee did not file a cross appeal, it cannot now raise this issue and we do not pass upon it.

by the real party in interest and not by a nominal subrogor if suit is brought in his name. *Eckels v. Firestone Products Co., Inc.,* 8 D. & C. 2d 178, 73 Mont. Co. L.R. 167 (1956). The complaint in the instant case was verified by one of the property owners.

Up to this point, therefore, it would appear that plaintiffs instituted suit as the real parties in interest and not as subrogors under Pa. R.C.P. 2002(d). However, both counsel in their opening statements at trial, advised the trial judge (outside the presence of the jury) that subrogation rights were at issue and raised a number of related points as to insurance coverage, payments by the insurers to the insured and damages which they believed would require rulings during the course of the trial or at its conclusion. The trial then proceeded to the completion of plaintiffs' case as to liability.

A motion by the County for compulsory nonsuit of plaintiffs was then made assigning a number of reasons in support of the motion. One reason assigned was that plaintiffs were not entitled to recover ". . . because they had been paid property damages from their own insurance companies and have executed subrogation contracts to the extent of the payments received" and that the ". . . subrogee insurance companies are not entitled to recover damages . . ." under the statute.

After the trial judge denied defendant's motion for compulsory nonsuit and prior to trial before the jury being resumed, counsel for the parties stipulated of record that damages to the building in question was $25,000 and for loss on inventory was $33,500, or a combined total loss of $58,500. It was *further stipulated of record at this point in the trial* that each of two insurers of plaintiffs had paid them $20,000 for a total of $40,000, that the insureds "executed subrogation", and that the payments made had been ". . . ap-

portioned, according to the insurance contracts between inventory and building."[3]

Plaintiffs then rested their case as did defendant without offering any evidence.

Although closing arguments of counsel were not recorded it would seem clear, as hereinafter disclosed, that one or both counsel in pleading their cause as to damages alluded to the stipulation of damages disclosing a breakdown of damages to the building in the amount of $25,000 and loss of inventory in the amount of $33,500.

After retiring and deliberating for some time, the jury sent a note to the Court as follows: "The jury has decided that Mr. Wolf should be awarded for damages *for the building* in the sum of $25,000. Is this acceptable?" [Emphasis added.]

After extensive discussion between the trial judge and counsel as to the import of such a verdict and its propriety, the court concluded that such a verdict would be proper and counsel then so stipulated. The jury was so advised and it returned such a verdict. Without objection of counsel, the court then "molded"

---

[3] "Mr. Gregg: By agreement of counsel, in order that certain legal issues may be resolved by the Appellate Courts, counsel for both parties stipulate that the Home Insurance Company paid to the plaintiffs $20,000, and the Insurance Company of the State of Pennsylvania paid $20,000, and that the insured executed subrogation—

Mr. Hickton: Do I understand there was $20,000 paid on the building and $20,000 paid on inventory?

Mr. Gregg: No.

Mr. Hickton: Did you give us a breakdown?

Mr. Gregg: Off the record. (Discussion had off the record.)

Mr. Hickton: Let us say that the $40,000 in payment was apportioned according to the insurance contracts between inventory and building.

The Court: Do you agree to that?

Mr. Gregg: Yes, I will agree to that. In view of the stipulation, your Honor, as to the damages, the plaintiff rests its case."

the verdict to read: "[W]e find a verdict for the plaintiffs in the sum of $25,000 and against the defendant."

Apart from the issue of subrogation, the appellants further contend that this record and the entry of judgment n.o.v. in favor of the County places them in a position of not recovering their uninsured losses, i.e., the difference between the total stipulated losses for property damage and loss of inventory of $58,500, less insurance payments of $40,000, or $18,500.

Appellee, on the other hand, argues that a reinstatement of the verdict would produce a recovery by plaintiffs, when combined with insurance proceeds, of $65,-000 or $6,500 in excess of the stipulated loss, which would indirectly recognize and effect a partial subrogation in favor of one or both insurance companies.

Neither of these extreme contentions can be supported by the record of this case as it now stands. However, in light of the jury verdict which found that plaintiffs were entitled to recover for property damages only (even though it was molded into a general verdict by the trial judge) and the stipulation of counsel that it was a proper verdict, the record is also insufficient to determine if plaintiffs were paid by their insurance carriers, or either of them, a total of $25,000 for damage to the property. On the record, we have only the stipulation that the $40,000 received by plaintiffs in insurance proceeds was ". . . apportioned, according to the insurance contracts between inventory and building."

To determine what amount, if any, plaintiffs are entitled to recover on the verdict which they won for damages to their building as a result of the riot in question as real parties in interest and not as subrogors, it will be necessary to reinstate the verdict and have further proceedings in the lower court.

Such further proceedings shall be limited to the question of what amount, if any, the jury verdict in

favor of plaintiffs for damage to their building exceeds insurance proceeds received by them for this particular damage from their insurance carriers.

If the lower court finds that insurance proceeds for this damage equal or exceed $25,000, judgment n.o.v. shall again be entered in favor of defendant. If the lower court finds that insurance proceeds for this damage are less than $25,000, the reinstated jury verdict shall stand and any execution on the judgment entered thereon shall be limited to the difference between the final amount of the judgment and the amount of insurance proceeds determined by the court to have been received by plaintiffs for damages to their property.

Accordingly, the order of the lower court directing entry of judgment n.o.v. in favor of defendant is reversed, the jury verdict in favor of plaintiffs is reinstated and the case is remanded to the lower court for further proceedings consistent with this opinion.

Judge CRUMLISH concurs in result only.

Judge MANDERINO dissents.