PROTECTION MUTUAL INSURANCE COMPANY, Respondent,

v.

KANSAS CITY, Missouri, Appellant.

No. KCD 27826.

Missouri Court of Appeals, Kansas City District.

May 2, 1977.

Motion for Rehearing and/or Transfer Denied June 1, 1977.

Application to Transfer Denied July 11, 1977.

Aaron A. Wilson, City Atty., Carrol C. Kennett, Asst. City Atty., Kansas City, for appellant.

Thomas J. Conway, Stephen G. Scholl, Kansas City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Presiding Judge.

This case arises out of the tragic 1968 riots in Kansas City, Missouri. During the civil commotion of April 10 and 11, 1968, one drugstore of Parkview Gem, Inc. was fire bombed and another was vandalized. Those losses were covered by an insurance policy issued by Protection Mutual Insurance Company, and Protection Mutual paid Parkview Gem $125,088.75 under that coverage. Thereafter on October 4, 1968, Protection Mutual submitted claim of damage to the City of Kansas City under the Missouri Mob Violence Statute, Section 537.140 RSMo 1969, for the amount which it had paid to Parkview Gem less salvage recovered of $15,354.36. The claim was denied, and Protection Mutual filed suit on December 28, 1970.

The City thereupon filed a motion to dismiss on the ground that the petition failed to state a cause of action. The circuit court sustained the motion, and Protection Mutual filed appeal to the Missouri Supreme Court. On that appeal, the City defended exclusively on the single theory that the Mob Violence Statute applied only to first and second class cities (as stated in the official revised statutes), whereas Kansas City is a constitutional charter city. The Supreme Court reversed in *Protection Mutual Insurance Co. v. Kansas City*, 504

S.W.2d 127 (Mo.1974) on the ground that the wording of the statute had been improperly changed in the revised statutes from that contained in the original legislation, and that the Mob Violence Statute did in fact apply to all cities of the State having population in excess of 25,000 inhabitants, regardless of classification.

On remand to the circuit court, the City filed another motion to dismiss alleging for the first time that Protection Mutual did not qualify as one of the classes of persons entitled to protection under the Mob Violence Statute and that the statute did not apply to Kansas City because the State had deprived it of control over the Kansas City Missouri Police Department. That motion was overruled, and the City repeated the same defenses in its answer. The case went to trial before a jury, resulting in a verdict of $110,890.68. Immediately prior to submission to the jury, the parties had stipulated that if the court determined as a matter of law that pretrial interest was proper, then such interest would be calculated and added to the jury verdict. The trial court did determine that pretrial interest was proper and pursuant to the stipulation calculated and added pretrial interest from the date of Protection Mutual's demand upon the City, in the amount of $40,540.41, as part of the total judgment.

The City's points of error on the present appeal may be summarized as follows: 1) that Protection Mutual has no standing to make claim; 2) that the City is not subject to the statute mentioned because the State has taken from the City the power to direct the police agency; 3) that the trial court erred in holding that the City is barred from reliance on the first two points just mentioned because of the prior Supreme Court decision in this case; 4) that the allowance of pre-judgment interest was improper; and 5) that the repeal of the Mob Violence Statute in 1975 by H.B. No. 398 terminated all rights of recovery thereunder and has discharged the City from any liability. If the City be correct in the last of those points, then the other assignments of error become immaterial. A discussion of this fifth point therefore calls for first attention.

I.

■ This point of error was not set forth in the City's principal brief even though the repeal statute was finally approved by the Governor on June 17, 1975, and even though the City's principal brief in this court was not filed until September 19, 1975. Disregard of this point would therefore be justified because of failure to raise the point in proper and timely fashion. Inclusion of a point on appeal in a reply brief for the first time comes too late. *Morris v. Reed*, 510 S.W.2d 234 (Mo.App.1974). Nevertheless, because this case involves public rights of a major metropolis, we prefer not to dispose of this point on the procedural ground, and will therefore address the point on the merits.

The City argues that Protection Mutual's claim depends entirely upon the Mob Violence Statute, that the repeal of that statute destroyed the cause of action, that all proceedings to enforce the claim must stop upon the effective date of the repeal if recovery has not been completely consummated, and that this result must follow even at the stage of an appeal after a judgment has been entered. That result could be true, however, only in the absence of a statutory clause saving pending causes of action.

A saving provision sufficient for the purposes of this case is provided in the companion statutory provisions §§ 1.170 and 1.180 RSMo 1969. The first of those statutes provides as follows:

"The repeal of any statutory provision does not affect any act done or right accrued or established in any proceeding, suit or prosecution, had or commenced in any civil case previous to the time when the repeal takes effect; but every such act, right and proceeding remains as valid and effectual as if the provisions so repealed had remained in force."

The second of those statutes provides:

"No action or plea, pending at the time any statutory provisions are repealed,

shall be affected by the repeal; but the same shall proceed, in all respects, as if the statutory provisions had not been repealed, except that all proceedings had after the repeal becomes effective are governed by procedural rules and laws then in effect, insofar as they are applicable."

█ Whenever the legislature repeals an existing statute, it is considered to have done so in contemplation of the general saving clauses above quoted; and unless the legislature specifically makes the repeal retroactive, it is presumed that those saving provisions are to be incorporated by reference with the same effect as if the repealing statute contained its own special saving clause. As stated in 2A Sands Sutherland Statutory Construction § 47.13:

"A legislature may enact a general saving statute which will save rights and remedies except where a subsequent repealing act indicates that it was not the legislative intention that particular rights and remedies should be saved. Although a legislature cannot bind future legislatures and each subsequent legislature can make its laws prevail over any preceding legislature, yet as all legislatures are presumed to act with a knowledge of existing law, it is presumed that they act with reference to any general saving statute. Thus, when a repeal is enacted unaccompanied by a provision saving existing rights which would be affected by its action, it is presumed that the legislature has acted with the intent to afford the protection of the general saving statute. In such cases the repealing act is to be considered as limited in its effect and operation in the same manner and to the same extent as if it contained the customary saving clause."

Applying this principle are *State ex rel. Wayne County v. Hackmann*, 272 Mo. 600, 199 S.W. 990 (banc 1917); *Christine v. Luyties*, 280 Mo. 416, 217 S.W. 55 (1920); *Rogers v. Pacific Railroad*, 35 Mo. 153 (1864); *State v. Ross*, 49 Mo. 416 (1872). The principle just mentioned is buttressed by the general presumption against retroactive ef-

fect of a statute. *State ex rel. Wabash Ry. Co. v. Public Service Commission*, 317 Mo. 172, 295 S.W. 86 (1927); *Biedermann v. Mermod, Jaccard & King Jewelry Co.*, 210 Mo.App. 158, 242 S.W. 126 (1922).

█ Seeking to avoid the impact of the foregoing principles, the City argues strenuously that neither Parkview Gem nor its subrogee Protection Mutual has any "vested right" in a right of action against the City to recover for the mob violence. However, the wording of Sections 1.170 and 1.180 does not confine the operation of those sections to the preservation of "vested rights." Moreover, the City has cited no Missouri case, and independent research discloses none, construing those sections in such a limited fashion. Still further, the narrow construction which the City seeks to give to these statutes is inconsistent with the interpretation by the Missouri Supreme Court of the underlying concepts in *State ex rel. St.Louis-San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409 (Mo. banc 1974) where the court discussed with reference to the retroactivity of statutes the concepts of "procedural rights," "substantive rights" and "vested rights." In that connection the court remarked at l. c. 411:

"It is best to keep in mind that the underlying repugnance to the retrospective application of laws is that an act or transaction, to which certain legal effects were ascribed, at the time they transpired, should not, without cogent reasons, thereafter be subject to a different set of effects which alter the rights and liabilities of the parties thereto. Merely to label certain consequences as substantive and others as procedural does not give sufficient consideration to this principle, and notions of justice and fair play in a particular case are always germane."

The City lays its heaviest emphasis on the case of *Shelton v. City of Chicago*, 42 Ill.2d 468, 248 N.E.2d 121 (1969) which involved a suit to collect damages under an Illinois statute permitting damages against a municipality because of civil riot, and where subsequent to the riot in question the legislature repealed the statute giving rise to

the cause of action. In that case, the Illinois court held that the repeal eliminated the cause of action and that this resulted despite another statute constituting a general saving clause. With respect to the effect of this latter statute, the Illinois Supreme Court at l. c. 123 had this to say:

"If this statutory expression of legislative intention was before the court for the first time, the plaintiffs' contention would not lack persuasiveness, for the statute refers to the effect of express repeals upon claims that have arisen. But we are not at liberty to disregard the earlier decisions of this court construing the Statutory Construction Act, for those decisions must have entered into the General Assembly's understanding of the meaning of that Act."

The *Shelton* opinion is not controlling here. The Illinois court felt itself bound by prior Illinois decisions construing the general saving statute. Our concern in this case is to apply Missouri, not Illinois, law. The Missouri decisions construing Sections 1.170 and 1.180, discussed above, are completely different and reflect a completely different philosophy than the Illinois decisions by which the court felt bound in the *Shelton* case.[1]

The City also presses hard the decisions construing the effect of the Portal-to-Portal Act which amended the Federal Wage and Hour Law. Those cases hold generally that the amendment operated retroactively and prevented recovery even in cases pending on appeal after entry of judgment by a trial court. The City urges particularly for consideration the decision in *Kemp v. Day & Zimmerman*, 239 Iowa 829, 33 N.W.2d 569 (1948). *Kemp* and similar cases are readily distinguishable on the ground that the Portal-to-Portal Act disclosed on its face, as recognized by the court decisions in question, a specific intention to make that statute retroactive.

The city also urges in support of its contention *State ex rel. McKittrick v. Bair*, 333 Mo. 1, 63 S.W.2d 64 (banc 1933), where a repealing statute was held effective to bar recovery in a case pending at the time of the repeal. However, that result is explained by the same reason that applies to the Portal-to-Portal cases, namely that the repealing statute itself evidenced a specific intention to make the repeal effective retroactively. Thus the *Bair* case states at l.c. 67: "With respect to the act here assailed, we do not yield to the presumption just stated [against retroactive application], since it is overwhelmed by the language of the act itself, which declares the existence of a situation, arising from lack of public revenue, so grave and exigent as to imperil the functioning of the state government itself in its essential branches, and implies that the remedy lies in changing the mode of collection, and thereby accelerating the collection, of delinquent taxes through the remission of the retarding penalties. This consideration impels the conclusion that in its fostering care for the transcendent public interest the Legislature intended that the act should suspend all provisions of law repugnant to the same or out of harmony therewith."

Other cases cited by the City have all been considered, but none are inconsistent with the principles discussed above. Nothing would be gained by extending this opinion to include an individual discussion of each of those authorities.

## II.

The City intermingles in its argument the three separate contentions identified earlier in this opinion as Points 1, 2 and 3 in our summary of the City's assignments of error. Those points are in fact interrelated and can best be discussed together.

The principal defense made by the City in the trial court and here is that an insurer has no standing to press a claim under § 537.140, either as a subrogee or as an

---

1. It is to be noted that the New Jersey Supreme Court in *A. & B. Auto Stores of Jones St., Inc. v. City of Newark*, 59 N.J. 5, 279 A.2d 693, l. c. 702 (1971), declined to apply *Shelton* and in-

stead held that a 1968 amendment to the New Jersey riot statute was effective prospectively only.

assignee. In support of this contention it relies upon *Interstate Fire & Casualty Co. v. City of Milwaukee,* 45 Wis.2d 331, 173 N.W.2d 187 (1970) which overruled a prior Wisconsin case, *Northern Assur. Co. v. City of Milwaukee,* 227 Wis. 124, 277 N.W. 149 (1938) which had held that the insurer could recover as subrogee under the Wisconsin Mob Violence Act. The City also relies upon *American Ins. Co. v. City of Milwaukee,* 51 Wis.2d 346, 187 N.W.2d 142 (1971) which extended the doctrine of the *Interstate* case to cover also the situation where the insurer took an express assignment of rights from its insured. The City cites also *A. & B. Auto Stores of Jones St., Inc. v. City of Newark,* 59 N.J. 5, 279 A.2d 693 (1971) which followed the *Interstate* decision. Not cited by the City but also following *Interstate* by a divided vote is *Wolf v. County of Allegheny,* 3 Pa.Cmwlth. 27, 281 A.2d 82 (1971).

On the other hand, Protection Mutual counters with the argument that those decisions were all result-oriented because they were decided at a time when thousands of live claims and hundreds of lawsuits were pending against the respective defendant cities, which threatened those municipalities with financial catastrophe. Protection Mutual points out that the same is not true in this case; the parties have stipulated that this case is one of only two live lawsuits pending in which a claim is being made for damage against Kansas City as a result of the April 1968 riot; the statute of limitations has completely run on all other claims; and the 1975 repeal of the Missouri Mob Violence Statute eliminates the prospect of any new similar litigation in the future. Protection Mutual urges that in the absence of compelling practical circumstances such as were present in the cases cited by the City, the rule announced in English cases which allow subrogation under such circumstances should be followed. *Mason v. Sainsbury,* 99 Eng Reprint 538 (K.B. 1782); *Clark v. The Inhabitants of the Hundred of Blything,* 107 Eng Reprint 378 (K.B. 1823).

A secondary defense advanced by the City is that when the General Assembly deprived the City of control over the Kansas City Police Department by the provisions of § 84.350 et seq. RSMo 1969, it impliedly relieved the City of any further obligation under § 537.140. Protection Mutual replies to this by saying that notwithstanding § 84.350 et seq., the City still retains sufficient power to protect against riots and that there was no implied repeal of § 537.140.

The trial court found it unnecessary to rule upon either of the City's two defenses just mentioned, on the ground that both of those defenses are barred by res judicata. In this connection, Judge Clark stated:

"The opinion rendered January 14, 1974 [504 S.W.2d 127] leaves no doubt as to the right of plaintiff to maintain this action and the duty of defendant City to respond. All that remained upon trial of the cause under the mandate was an evidentiary showing by plaintiff that the conditions set forth in Laws 1881, Section 2 were met. The standing of plaintiff to maintain the action and applicability of strict liability to defendant City under the statute are no longer issues remaining for litigation. As such is the thrust of each of the points asserted by defendant under the first of its arguments, they must be ruled against defendant.

"In this regard, it must be conceded that the court on appeal did not rule in this case on any issues except the question presented, i.e., the effect of publication by the revisors of the statutes of different language from that used by the legislature in the original enactment in 1881. The court file reflects that such was the *only* point raised by defendant in its motion to dismiss filed under Civil Rule 55.33 (Now included in Civil Rule 55.27) and the *only* point presented to the Supreme Court on appeal. It is apparent, however, that the contentions now advanced by defendant wherein the issues are the standing of plaintiff to maintain this action under the statute and the application of the statute to defendant are matters within the scope of defendant's original motion to dismiss. That motion and the subsequent appeal afforded de-

fendant the opportunity fully to litigate the sufficiency of plaintiff's alleged cause of action as stated in the petition upon which this cause was subsequently tried. Having failed to raise these points at a time when, with reasonable diligence, they could have been asserted, these issues are no longer available under the doctrine of res judicata. A party is not permitted to assert defenses piecemeal but must offer each ground of contest when the issue is being or could be litigated."

■ The City complains that the trial court incorrectly applied the doctrine of res judicata rather than the related doctrine of law of the case. The City argues that under the latter doctrine, the decision by the Supreme Court on the first appeal of this case bars only the issue that was actually decided and does not bar the additional defenses urged for the first time after remand.

Where, as occurred here, an appellate court reverses a dismissal of the cause of action and remands the case for trial, the appellate ruling strictly speaking does not constitute res judicata, but it does govern all further proceedings as the law of the case. Some disagreement exists among the cases as to the effect of the appellate decision as precluding questions which were not presented but which could have been presented to the appellate court. The general rule declares that all questions which could have been presented become barred, but there are some decisions to the contrary. 5 Am.Jur.2d Appeal and Error § 552, p. 196; 5B C.J.S. Appeal and Error § 1825, p. 197.

Missouri follows the general rule. As stated in *Wilson v. Toliver*, 305 S.W.2d 423, 428 (Mo.1957), "the decision on the former appeal will be deemed an adjudication, not only on all questions directly raised and passed on, but also of matters which arose prior to the first appeal and which might have been presented at that time but were not." The same doctrine is expressed in *Norris v. Bristow*, 361 Mo. 691, 236 S.W.2d 316, 319 (1951) and is followed in a most recent statement by a Missouri court on the subject in *Langdon v. Koch*, 435 S.W.2d 730, 733 (Mo.App.1968).

■ Under that doctrine, the defenses now sought to be asserted by the City have become barred. Its original motion to dismiss was filed February 25, 1971. The *Interstate* case had been decided by the Wisconsin Supreme Court more than a year earlier on January 9, 1970. The doctrine of that case, which is now relied upon by the City, was available at the time the City filed its original motion to dismiss and could have been asserted as an alternative and additional ground for that motion. By the time Judge Stubbs ruled that motion on September 28, 1971, the *American Ins. Co.* case had also been decided on June 2, 1971, the *A. & B. Auto Stores* case had been decided on June 30, 1971, and the *Wolf* case had been decided on August 10, 1971. Those cases, as well as the *Interstate* case were therefore all fully available to the City for citation to the Supreme Court as alternative and additional reasons to support Judge Stubbs' ruling. Yet the City chose not to make any mention of these authorities in support of what is now its principal defense. Nor did it suggest in any way its secondary defense based on § 84.350 until the case was remanded to the Circuit Court, although there were no new facts or legal authority to support that defense which had not existed during the pendency of this case on the first appeal. It may very well be that the City deliberately refrained from presenting these defenses out of a strategic decision to delay all claimants as long as possible and to postpone to the last possible moment a final determination of its liability under the Mob Violence Statute. Whether that be true or not, the fact remains that the City had ample opportunity to raise these defenses prior to and on the first appeal of this case, and it should not be heard to complain about a declination to hear those matters now at this late date.

This result harmonizes with the spirit of modern pleadings and practice. In the interest of expediting trial for litigants and in

order to economize the use of judicial time, the rules of procedure require motions generally to be filed all at one time rather than piecemeal. Rule 55.27. Here the City did file in 1971 a motion to dismiss in which the points which it now belatedly seeks to argue could have been included. See *Collins v. Vernon*, 512 S.W.2d 470, 474–475 (Mo. App.1974). What was held in *Munson Line, Inc. v. Green*, 6 F.R.D. 470 (S.D.N.Y. 1947) under somewhat similar circumstances is also appropriate here:

"It appears that in February, 1946, the defendants moved before Judge Conger under Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted and that, at the same time, plaintiff moved for the same relief embraced in (3) of its present motion. In August Judge Conger rendered his opinion, 6 F.R.D. 14, dismissing the second and third causes of action, sustaining the first cause of action and denying plaintiff's motion. Defendants now ask for summary judgment dismissing this first cause of action.

\*    \*    \*    \*    \*    \*

"I must accept [Judge Conger's] decision as the law of the case.

\*    \*    \*    \*    \*    \*

"Defendants . . . say that the questions presented by their motion were not raised or decided upon their previous motion before Judge Conger. In my view, these question could and should have been presented then, for they arise upon the face of the complaint.

\*    \*    \*    \*    \*    \*

"The grounds for dismissal now urged could have been urged on the previous motion to dismiss. In my opinion on a motion to dismiss for insufficiency all the reasons for dismissal should be presented and any not presented should be treated as having been waived and not available on a later motion for summary judgment. Although I discover no case directly in point and although the situation is not directly covered by the Rules, it is certainly within their spirit, for they were

'designed to encourage the consolidation of motions and to discourage the dilatory device of making them in series' . . . ."

### III.

■ The City's final contention, a valid one, is that the trial court erred in allowing pretrial interest. The City relies essentially upon the general rule that interest cannot be allowed as part of the damages if the basic damages are unliquidated in nature. That historically has been the conventional rule and is still stated to be the general rule in Missouri. *St. Louis Housing Authority v. Magafas*, 324 S.W.2d 697 (Mo.1959); *Cannon v. Bingman*, 383 S.W.2d 169 (Mo.App. 1964); *General Insurance Co. of Amer. v. Hercules Construction Co.*, 385 F.2d 13, l.c. 25 (8th Cir. 1967).

■ Protection Mutual counters with the citation of authorities stating that the modern tendency is to allow interest as part of the damages whenever justice and equity so requires, and it recites many types of legal situations in which interest has been allowed by the Missouri courts even though the basic damages are unliquidated in nature. Cases of this character include suits to recover in quantum meruit, conversion, condemnation, and fraud and deceit. The present case does not fall within any of those classes. Rather this case seems to fit more properly within the Missouri rule that interest will not be allowed on actions ex delicto where no pecuniary benefit could accrue to the defendant by reason of the injury. *Gerst v. City of St. Louis*, 185 Mo. 191, 84 S.W. 34 (1904); *Lober v. Kansas City*, 339 Mo. 1087, 100 S.W.2d 267 (1936).

Recovery under the Missouri Mob Violence Act is sui generis. That right was created by statute, and whether interest should be included as recoverable damages should depend on the legislative intention. That intention may be gleaned by a comparison of § 537.140, under which this suit is brought, with the companion § 537.150. The latter section provides that any city paying the value of property destroyed by riot may recover the amount so paid "with

10% added *and interest* and costs" from the person or persons who engaged in or who abetted riot. On the other hand, § 537.140, which created the cause of action against the City itself, was wholly silent with respect to the collection of anything beyond the simple value of the property destroyed. Because of the contrast between these two sections, it must be inferred that the legislature did not intend the recovery of interest against the City.

The judgment will therefore be modified to delete the allowance of pretrial interest; as so modified, it is affirmed.

All concur.