**In re ESTATE of Mattie B. SYMPSON, Deceased, Robert B. Sympson, Appellant.**

**No. KCD 29728.**

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1978.

Motion for Rehearing and/or Transfer Denied Jan. 31, 1979.

Robert B. Sympson, pro se.

Stanley I. Dale, Dale, Flynn, Bauman & Liles, St. Joseph, for respondents.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Robert B. Sympson appeals from an order entered July 13, 1977, setting aside a previous order which had made certain allowances to him as the surviving spouse of Mattie B. Sympson and which had refused letters of administration in regard to this estate. Sympson's Points Relied On are: (1) that the earlier judgment had become final prior to July 13, 1977, and was not subject to being set aside; and (2) that the court erred in deeming the earlier judgment vulnerable because of lack of notice to other parties and in allowing the motion despite certain alleged inadequacies. Sympson attempts in his reply brief for the first time to supplement those complaints by an additional ground, but that additional ground is improperly raised by reply brief and therefore will not be considered. *Protection Mutual Ins. Co. v. Kansas City,* 551 S.W.2d 909[1] (Mo.App.1977); *Morris v. Reed,* 510 S.W.2d 234[4] (Mo.App.1974).

The essential facts may be summarized as follows. On April 8, 1977, Eliza B. Sprengel and Helen E. Mitchell, sisters of the de-

ceased, filed application for letters of administration in the Probate Court of Buchanan County. A few days later, Sympson filed an application for an allowance of exempt property, statutory allowances, and statutory maintenance, and in the same application he requested an order of the court refusing letters of administration under the provisions of Section 473.090 (all statutory references in this opinion are to RSMo1969). Concurrently with that application, Sympson also filed a motion to disqualify the probate judge. In response to the motion to disqualify, the probate court on April 21, 1977, transferred the proceedings to the circuit court for further proceedings.

On April 26, 1977, Sympson's counsel appeared before the circuit court ex parte, and the court issued an order on April 27, 1977, granting Sympson household goods and items as exempt property, a maintenance allowance of $15,000 and a homestead allowance of $4,359.40. This order also purported to adjudicate and vest title in Sympson with respect to various items of property, including the following: (1) a diamond ring valued at $3,000 which Sympson described in his application as follows: "One engagement Ring, a 14 K. White Gold Setting, with an Old Mine Cut Diamond, weighing approximately 1.33 carats, which was in the decedent's jewel box on her dressing table at the time of her demist [sic]; and which said jewel box Eliza Bedford Sprengel unlawfully and surreptitiously removed [from] decedent's dressing table on the 1st or 2nd day of February, 1977; and when on the 2nd or 3rd day of February, 1977, when Eliza Bedford [Sprengel] brought said jewel box back to the apartment that decedent and her surviving spouse had been occupying and gave it to the surviving spouse, the applicant herein, he opened said jewel box, and the above described Old Mine Cut Diamond and its 14 K. White Gold Setting had been removed and was missing, and still remain missing to this day"; (2) "Cash for money advanced to Helen Mitchell and Eliza B. Sprengel for maintenance, repairs, improvements, and taxes on jointly owned property at 2607 Ashland Blvd., St. Joseph, Missouri,

$3,280.96"; and (3) a cash sum of $123 to which Sympson referred in his application in the following terms: "Cash, which in the form of U.S. Currency Eliza Bedford Sprengel unlawfully book [sic] from decedent's pocket book on February 2, 1977, and which said Sprengel thereafter unlawfully and surreptitiously removed from the apartment occupied by decedent and her surviving spouse, and which currency, although said Sprengel has been requested by decedent's surviving spouse to return said currency to the surviving spouse so that he could make a proper report of the same to the Probate Court, said Sprengel has failed and refused to return such money to the surviving spouse, applicant herein."

The April order by the circuit court further found that Sympson was entitled to an order refusing to grant letters of administration, and the court denied and dismissed the application for letters of administration theretofore filed by the two sisters. No notice was given to the sisters or their attorney with respect to said hearing and order by the circuit court, nor was any notice given to them after the entry of that order as provided by Rule 74.78.

On July 6, 1977, the sisters by their attorney filed a motion to set aside the April order just described. On July 13, 1977, the circuit judge sustained that motion based on the following findings: "The Court further finds that counsel for Robert B. Sympson appeared in this Court on April 27, 1977 and obtained an Order relative to the request of Robert B. Sympson; and that said Order was obtained from the Court without having first notified Eliza B. Sprengel and Helen E. Mitchell or their attorney of a hearing in this cause, and for this reason, the Order entered by this Court on April 27, 1977 should be set aside and the matter set for hearing before the Court."

I.

■ Before addressing Sympson's contentions, a motion to dismiss the appeal filed by the sisters (and previously ordered by this court to be taken with the case as a whole) awaits attention. The sisters urge

three grounds for dismissal. Their first ground is that the order of April 27, 1977, is not a final order. Even assuming this to be correct, that order is nevertheless appealable under Section 512.020 as a "special order after final judgment." *State ex rel. Potter v. Riley,* 219 Mo. 667, 118 S.W. 647 (banc 1909); *Jeude v. Sims,* 258 Mo. 26, 166 S.W. 1048 (banc 1914); *Scott v. Rees,* 300 Mo. 123, 253 S.W. 998 (1923).

■ As their second ground for dismissal, the sisters argue that Sympson presented his same points in a prior petition to this court for a writ of prohibition and that the denial of that petition is now res judicata. A denial of an application for a writ of prohibition does not necessarily reflect any view by the court on the merits, but rather may and very often does constitute only a ruling that the situation does not warrant utilization of the extraordinary writ of prohibition. Therefore there is no basis for the sisters' claim of res judicata.

■ The third ground for dismissal is that Sympson's appeal was untimely. The record shows that he did file this appeal within ten days after the order of July 13, 1977, became final. It was therefore timely. There being no merit in any of the grounds urged for dismissal, the motion to dismiss the appeal is overruled.

## II.

■ Turning now to Sympson's points, he argues first that by July 13, 1977, the judgment of April 27, 1977, had become final and was not subject to being set aside. In support, he argues that no exceptions had been filed under Section 474.290(6), no motion for new trial had been filed, no notice of appeal had been filed, and more than 30 days had expired. This argument leaves out of account Rule 74.32 which provides three years within which a judgment may be set aside for irregularity. *White v. Huffman,* 304 S.W.2d 909 (Mo.App.1957), holds that lack of proper notice does constitute an "irregularity" within the meaning of that rule. Although *White* involved a failure to give a notice required by statute, the lack of notice is equally as important even though there be no statutory require-

ment for notice. This proposition is more fully developed under point III below.

## III.

Sympson's second point is two-pronged. In the first place, he argues that the trial court mistakenly set aside the April judgment for lack of notice because "the statutory proceedings for awarding allowances to a surviving spouse is ex parte and summary in small estates, and there is no requirement for notice to possible interested persons in the estate." Sympson is correct in saying that the statute providing for refusal of letters in small estates, Section 473.090, makes no provision for notice to anyone. Also, although not cited by Sympson, Section 472.100.1 says that "[n]o notice to interested persons need be given except as specifically provided for in this code or as ordered by the court." However, that section immediately goes on to provide: "When no notice is required by this code, the court may require such notice as it deems desirable by a general rule or by an order in a particular case." As a practical matter, there may be little reason for any notice in the situation of the usual small estate where the family comes to an amicable agreement for distribution of the property and creditors are taken care of in an informal manner. The situation in this case is vastly different.

Here the parties were already locked in combat in the probate court before the removal at Sympson's instance to the circuit court. That contest between Sympson and the sisters was bitter, as demonstrated by the acrimonious allegations contained in Sympson's application filed in the probate court, which are above quoted. Although in the usual case practicality may justify a calculated gamble in dispensing with notice, notice to the sisters under the facts of this case certainly should have been given and the failure to do so cannot possibly be excused.

■ Even in the absence of a specific requirement for notice by statute or court rule, constitutional considerations make notice imperative to parties who will be directly affected by the order. This point is strongly stated in a leading case, *Hoppe,*

*Inc. v. St. Louis Public Service Co.,* 361 Mo. 402, 235 S.W.2d 347 (Mo. banc 1951), where the court held in part as follows:

"It may be conceded that no provision of that statute required a notice to be here given. But the requirement of reasonable notice goes deeper than that."

\*    \*    \*    \*    \*    \*

"The question instantly before us goes deeply into the underlying principles of due process. In our system of jurisprudence reasonable notice to a litigant (when there exists even the possibility of action adverse to his interests) is deemed to be of the essence of fairness and justice. Reasonable notice to parties whose interests are at stake in a contemplated order is a prerequisite to the lawful exercise of the court's power. Opportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights is the very foundation stone of our procedure. The requirement of notice can result in no hardship. Nor is it restrictive of the trial court's freedom of action in the exercise of its judicial discretion. In 66 C.J.S. Notice § 14, p. 652, it is said: 'While the view had been expressed that usually notice of summary action is not essential, it has been held or recognized that, where an act to be performed by a court or other authority will especially affect a particular individual, reasonable notice should be given to him, so that he may appear and be heard, even though the giving of notice is not required by statute, and that, where a statute confers power on a judicial or an administrative agency to render a judgment or make an order affecting rights of persons or property, and no provision is made for notice, the court will require a reasonable notice.' "

That rule has been frequently and uniformly followed. See for example, *In re Waters' Estate,* 153 S.W.2d 774 (Mo.App.1941); *In re Jackson's Will,* 291 S.W.2d 214 (Mo.App. 1956); *Baker v. Baker,* 274 S.W.2d 322 (Mo. App.1955). Under that doctrine, the sisters were entitled to notice and a right to be heard before the circuit court entered an order having the effect of divesting them of any share in their sister's estate and in addition determining claims to property and at least one item of indebtedness which were matters of contest between the parties. The trial court was eminently correct in setting aside the April judgment which was entered without such notice and opportunity to be heard.

Sympson is equally incorrect in his contention that the motion by the sisters to set aside the April judgment was inadequate and barred by the statute of limitations. Sympson's argument on this subpoint rests entirely upon the requirements of Section 474.290(6) which deal with the time for and the form of exceptions to a homestead allowance. The complete answer to Sympson's present argument is that the sisters did not purport to proceed under Section 474.290(6), and therefore the provisions of that section are completely irrelevant.

Affirmed.

All concur.